THE PEOPLE ex rel. FREDERICK L. TAYLOR, Appellant, *v.*
GERRIT A. FORBES, Justice, etc., Respondent.

| 143 | 219 |
| 150 | 377 |
| 143 | 219 |
| 164 | 466 |
| 143 | 219 |
| 167 | 395 |

The provision of the Code of Criminal Procedure (§ 515) abolishing writs of error and certiorari and enacting that judgments and orders in criminal cases and orders in "special proceedings of a criminal nature" may be reviewed only by appeal, does not include proceedings to punish for a criminal contempt.   The "special proceedings of a criminal nature" referred to are those designated as such in said Code.

An order, therefore, made in proceedings to punish for a criminal contempt may be reviewed by certiorari.

The constitutional and statutory provisions (U. S. Const. art. 5; State Const. art. 1, § 6; Code Civ. Pro. § 837; Code Crim. Pro. § 10), declaring that no person shall be compelled to testify against himself in any criminal case, protects a person called as a witness in any judicial or other proceeding against himself, or upon the trial of issues between others, from being compelled to disclose facts or circumstances that can be used against him as admissions tending to prove his connection with any criminal offense of which he may then or thereafter be charged, or

the sources from or the means by which evidence of its commission or of his connection with it may be obtained. Nothing short of absolute immunity from prosecution can take the place of the privilege so given.

The witness is himself in such a case the judge as to the effect of answers sought to be drawn from him, and if to his mind it may constitute a link in the chain of evidence sufficient to convict him or put him in jeopardy, if other facts are shown, he may remain silent, unless it be perfectly clear that he is mistaken and that the answer cannot possibly injure him, or tend in any way to subject him to the peril of prosecution.

While the students belonging to one of the classes of C. University were holding a banquet, a poisonous gas was injected by some persons, presumed to be other students, into the dining hall and adjoining kitchen, which caused the death of one person and seriously affected many others. The grand jury instituted an inquiry to ascertain who were the guilty persons, and the relator was subpœnaed before it as a witness. After he had testified that he had no connection whatever with the transaction, he stated that he and his room mate had taken a course in chemistry, and were familiar with the methods of generating the gas used. Various questions were then asked him for the purpose of ascertaining who placed the jugs, in which the gas was generated, in the room under the dining hall, among others, if he knew where the jugs were purchased, who purchased them, when purchased and to whom delivered after they were purchased. These questions he declined to answer on the ground that they would tend to criminate him. It appeared that the relator boarded in the house from whence the jugs were taken and his room mate was one of the persons suspected. In proceedings to punish for contempt in refusing to answer said questions, *held,* that the case came within the said constitutional and statutory provisions ; that the relator did not waive his right by testifying that he had no connection with the transaction ; and so, that an order adjudging the relator guilty of contempt in refusing to answer was error.

*People ex rel. Taylor* v. *Forbes* (77 Hun, 612), reversed.

(Argued June 21, 1894; decided October 9, 1894.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, made April 24, 1894, which dismissed a writ of certiorari issued upon application of the relator.

The relator was convicted of a criminal contempt in refusing to answer questions while testifying before the grand jury, and was committed for such contempt.

The facts, so far as material, are stated in the opinion.

*Frederick Collin* for appellant. The writ of certiorari to review, applied for and issued under sections 2120, *et seq.*, of the Code of Civil Procedure, was the proper remedy, and by it the proceedings were properly before the General Term, and by the appeal are properly before this court. (Code Civ. Pro. §§ 8, 9, 2148; Code Crim. Pro. §§ 515, 619.) This court will look into the record for the purpose of seeing whether the Court of Oyer and Terminer kept within its jurisdiction, based its decisions upon legal proof of facts authorizing it, and violated no rule of law in its proceeding affecting the relator. (Code Civ. Pro. § 2140; *People ex rel.* v. *French*, 92 N. Y. 306; *People ex rel.* v. *French*, 123 id. 636.) It is clear that the death of Henrietta Jackson and the injuries to the banqueters may have resulted from acts which are crimes. They may be murder in the first degree. (Penal Code, §§ 183, 193, 218, 219, 448.) No person is compelled to be a witness against himself. (Code Crim. Pro. § 10; Code Civ. Pro. § 37.) Such constitutional and statutory provisions must be most broadly and liberally construed as an immunity or privilege to a witness. (*Boyd* v. *United States*, 116 U. S. 616; *Counselman* v. *Hitchcock*, 142 id. 547; *Emery's Case*, 107 Mass. 172; Code Civ. Pro. § 837; *State* v. *Newell*, 58 N. H. 314; *Ex parte Boscowitz*, 84 Ala. 463; *Minters* v. *People*, 139 Ill. 363; *Temple* v. *Comm.*, 75 Va. 892; *Printz* v. *Cheeney*, 11 Iowa, 469; *Coates* v. *Hardacre*, 3 Taunt. 424; *People* v. *Mather*, 4 Wend. 230; 2 Phillips on Ev. 930; 1 Greenl. on Ev. § 451; *State* v. *S. H. Co.*, 109 Mo. 118; *Stevens* v. *State*, 50 Kans. 712; *In re Nickell*, 47 id. 712; *Warner* v. *Lucas*, 10 Ohio, 337; *People* v. *Brewer*, 27 Mich. 134; *Fisher* v. *Ronalds*, 16 Eng. L. & Eq. 417; 1 Burr's Tr. 245; *Fellows* v. *Wilson*, 31 Barb. 162; *People* v. *Hackley*, 24 N. Y. 74; *People* v. *Sharp*, 107 id. 427.) The relator, by answering certain questions against which he might have claimed his privilege, did not waive his right to claim it as he did. (*Regina* v. *Garbett*, 1 Den. Cr. Cas. 241; *Chesapeake Club* v. *State*, 63 Md. 446; *Temple* v. *Com.*, 75 Va. 892.) The relator was entitled to his privilege, and was

**222**     People ex rel. Taylor *v.* Forbes.     [Oct.,

Opinion of the Court, per O'Brien, J.     [Vol. 143.

not guilty of contempt. That the relator cannot be indicted for anything which is found out does not affect relator's right. (*People* v. *Mondon*, 103 N. Y. 211; *People* v. *Chaplean*, 121 id. 266; *Temple* v. *Com.*, 75 Va. 892.) The adjudication against and the punishment of the relator were extra-jurisdictional and void. (Code Civ. Pro. § 70; *In re Eldridge*, 82 N. Y. 161; *People* v. *Hackley*, 24 id. 74; *In re Savin*, 131 U. S. 267; *In re Judson*, 3 Blatchf. 148; *State* v. *Henthorn*, 46 Kans. 613; *Ex parte Wright*, 65 Ind. 504; *Stuart* v. *Allen*, 45 Wis. 158; *In re Smethurst*, 2 Sandf. 724; *Gundy* v. *State*, 13 Neb. 445.)

*S. D. Halliday* for respondent. This appeal and all the proceedings herein should be dismissed upon the ground that this matter cannot be reviewed by a writ of certiorari, and the writ should not have been issued in the first instance. (*People* v. *Palmer*, 109 N. Y. 413; Laws of 1884, chap. 372; *People ex rel.* v. *Carney*, 29 Hun, 47; *People* v. *Gilmore*, 88 N. Y. 626; Code Civ. Pro. §§ 514, 963, 3355, 3356.) In every case the question whether the answers to the question will or will not criminate, is purely a question of fact to be determined by the court. (*Byass* v. *Smith*, 4 Bosw. 679.) The question on this review now is, whether that finding of fact shall be disturbed. The Supreme Court at General Term did not disturb that finding, and it should not be disturbed in this court unless it is entirely lacking in evidence to sustain it, or so lacking such evidence as to raise purely a question of law. (*Musgrave* v. *Buckley*, 24 N. Y. S. R. 74; *Coffin* v. *Hollister*, 36 id. 271; *Smith* v. *Pettee*, 70 N. Y. 13; *Youngs* v. *Youngs*, 5 Redf. 518; *People* v. *Hackley*, 24 N. Y. 74.)

O'Brien, J. The relator was adjudged guilty of contempt by the justice presiding at a Court of Oyer and Terminer held at Ithaca in March, 1894, for refusing to answer certain questions propounded to him as a witness before the grand jury. The General Term, upon certiorari, has affirmed the determination.

At the outset the objection is made by the learned counsel for the respondent that the order is not reviewable. This position is based upon the language of § 515 of the Code of Criminal Procedure, as amended by chapter 372 of the Laws of 1884, abolishing writs of error and certiorari, and enacting that judgments and orders in criminal cases and orders in special proceedings of a criminal nature may be reviewed only by appeal. But we think that the " special proceedings of a criminal nature," referred to in this section, are those designated as such in that Code ; that is, the various special proceedings enumerated and provided for in part sixth of the Code of Criminal Procedure. By section 962, that Code applies to criminal actions and to all other proceedings in criminal cases which are *therein provided for.* Proceedings for contempt are not provided for in that Code, nor is a criminal contempt there defined, or the punishment therefor prescribed, except in § 619, which refers to cases of disobedience to process and refusal to answer as a witness.; and in these cases the remedy is referred to the procedure prescribed in civil cases provided for in the Code of Civil Procedure. The offense of which the relator was convicted is created and the procedure and punishment prescribed by sections eight and nine of this Code, and the manner of reviewing the determination is to be found there. (§ 2148.) This section clearly contemplates that an order made in contempt proceedings may be reviewed by certiorari, and such has always been the practice. (*People ex rel. Munsell* v. *The Court of Oyer and Terminer,* 101 N. Y. 245 ; *People ex rel. Choate* v. *Barrett,* 56 Hun, 351 ; *S. C.,* 121 N. Y. 678 ; *People ex rel. Negus* v. *Dwyer,* 90 id. 402.) It was not intended that any change should be made in the practice in such cases by the amendment to § 515 of the Code of Criminal Procedure. Full force is given to the language of that section by confining it to such actions and special proceedings as are defined and regulated by that Code ; and as no provision is there made for proceedings to punish for contempt or to review any order made in such proceedings, the practice is governed by the

same procedure as applies to ordinary cases where private rights are involved, the determination to which may be reviewed by means of the writ of certiorari; and so, we think, that the record is properly before us for review. The merits of the case, or the power of the court to punish the relator for contempt, upon the facts and circumstances disclosed, must, therefore, be considered.

The case grew out of the conduct of certain of the students at Cornell University on the 20th of February, 1894. That was the date of the customary annual banquet by the freshman class of the college. It is supposed, and is perhaps a fair inference from what appears in the record, that other students at the college, and especially those of the sophomore class, conspired to disturb the banquet by a new form of that species of annoyance or outrage popularly known as "hazing," which constitutes such a great reproach to college life, and is so disgraceful to all who participate in it. During the evening, while the banquet was in progress, a quantity of chlorine gas, of such poisonous power, was injected into the dining hall and the adjoining kitchen, that it caused the death of a colored servant in the kitchen, and many of the students attending the banquet were also seriously affected by it. The result was produced by placing two jugs in a room just below the banqueting rooms, containing the essential chemicals and substances for the generation of the gas, which was conducted into the kitchen and dining hall above by means of a rubber tube, fastened over the mouth of each jug, and passing upward through holes for that purpose bored in the ceiling and floor above. The act was of such an unusual and peculiar nature, and it was followed by such serious consequences, that public sentiment demanded the detection and punishment of its authors and perpetrators. The grand jury was instructed by the court to institute an inquiry with the view of ascertaining the person or persons responsible for the offense, and the relator was subpoenaed before them as a witness. The district attorney appeared before them and participated in the examination of the witnesses, and, during the investigation,

the questions which the relator declined to answer were propounded to him. The court convicted the relator summarily as for contempt " committed in the immediate view and presence of the court," upon the statement as to what occurred in the grand jury room by the district attorney and without any further judicial inquiry as to the facts. The record contains that part of the examination of the relator before the grand jury wherein the alleged contempt was committed. It discloses the fact that the witness was pressed by the district attorney to answer the questions, and having been brought before the court during the progress of the examination, was in substance instructed that the questions were of such a character that he was, under the circumstances, bound to answer. He testified in the broadest terms, in reply to questions propounded to him, that he had no connection whatever with the transaction, on the evening of the banquet, and which was the subject of the inquiry. These questions were general and so framed that he could easily see their bearing and tendency. They gave him an opportunity to deny in general terms that he was the author and perpetrator of the offense or in any way connected with it, but when questioned as to particular facts and circumstances, he refused to answer. The order of commitment contains upon its face a statement of the proceedings in the grand jury room which constituted the contempt of which the witness was convicted. From that it appears that the relator refused to answer questions framed evidently for the purpose of ascertaining the person or persons who placed the jugs in which the gas was generated in the room under the dining hall. He was asked if he knew where the jugs were purchased, who purchased them, when purchased and to whom they were delivered after they were purchased. These questions were framed in various forms and sometimes repeated. After testifying that he was a student at the university, that his home was in New Jersey, that he boarded at No. 6 Cook street in Ithaca, he was asked who his room mate was. He

then stated to the district attorney : " I wish to throw myself
upon the privilege which the law allows me and decline to
give evidence, on the ground that it may tend to criminate
me." He was then asked the following question : " Do you
say that it will tend to criminate you to state who your room
mate is ?" His only reply was : " I wish to throw myself
upon my privilege and decline to give evidence, on the
ground that my answer may tend to criminate me." The witness
was then brought into court, and after consultation with the pre-
siding judge he returned to the grand jury room and testified
that his room mate then and since he came to college was Carl
Dingens, that both of them had taken a course in chemistry,
and, substantially, that they were familiar with the methods
of generating chlorine gas. Other questions having more or
less relation to the transaction, on the evening of the banquet,
was asked and answered, but none of them gave the informa-
tion sought to be obtained by the questions before referred to,
which he declined to answer. On a report of these facts to
the court by the district attorney an order was directed to be
entered whereby the relator was adjudged guilty of contempt
for refusing to answer, and that for such contempt he be
imprisoned in the county jail until purged of the same, not
exceeding thirty days.

The broad question thus presented upon these facts is
whether the relator was in fact guilty of such conduct as sub-
jected him to the power of the court to punish for contempt,
or simply exercised a right secured to him by law. It must
be assumed that the act by means of which a deadly gas was
conducted into the rooms above, resulting in the loss of life,
was of such a character and perpetrated with such intent as to
subject the author, or any one who aided or assisted, to crimi-
nal punishment. The relator, though in fact he may be inno-
cent, was so situated with reference to it, and so related to the
circumstances and results, that it is apparent that at some
point and in some way it became, under all the circumstances,
not only prudent, but necessary and proper, to claim the
privilege of refusing to disclose the information sought to be

elicited by the questions. He was a student in the college. He belonged to the sophomore class and the class in chemistry. He boarded at the house from which the jugs were taken by some one. His room mate, at least, seems to have been one of the persons suspected as being in some way connected with the transaction. He was so surrounded by elements of circumstantial proof that the answer to any of the questions might form a link in the chain sufficient to subject him to the hazard of a trial upon a criminal charge. Whether innocent or not, there was a combination of facts and circumstances that brought him perilously close to the charge which was the subject of investigation, and the answer which he was required to give might have completed the chain of proof. He was thus placed in a position where he might lawfully claim the protection of the law and remain silent.

After the Constitution of the United States had been adopted, it was deemed important to add to it several amendments, and one of them (Art. 5) provides, among other things, that no person " shall be compelled, in any criminal case, to be a witness against himself." It was also incorporated into the Constitution of this State (Art. 1, § 6) and more recently into the Code of Civil and Criminal Procedure (Code Civil Pro. § 37; Code Crim. Pro. § 10). These constitutional and statutory provisions have long been regarded as safeguards of civil liberty, quite as sacred and important as the privileges of the writ of habeas corpus or any of the other fundamental guaranties for the protection of personal rights.

When a proper case arises they should be applied in a broad and liberal spirit in order to secure to the citizen that immunity from every species of self-accusation implied in the brief but comprehensive language in which they are expressed. The security which they afford to all citizens against the zeal of the public prosecutor, or public clamor for the punishment of crime, should not be impaired by any narrow or technical views in their application to such a state of facts as appears from the record before us. The right of a witness to claim the benefit of these provisions has frequently been the subject

of adjudication in both the Federal and state courts. The principle established by these decisions is that no one shall be compelled in any judicial or other proceeding against himself, or upon the trial of issues between others, to disclose facts or circumstances that can be used against him as admissions tending to prove his guilt or connection with any criminal offense of which he may then or afterwards be charged, or the sources from which or the means by which evidence of its commission or of his connection with it may be obtained. The cases cover the point so completely that no comment or explanation is necessary, and it would not be useful to quote at much length from the language in which the decisions are expressed. It will be quite sufficient for every purpose of the opinion to note where they may be found. (*Counselman* v. *Hitchcock*, 142 U. S. 547; *Emery Case*, 107 Mass. 172; *State* v. *Nowell*, 58 N. H. 314; *Ex parte Boscowitz*, 84 Ala. 463; *Minters* v. *People*, 139 Ill. 363; *Temple* v. *Commonwealth*, 75 Va. 892; *Printz* v. *Cheeney*, 11 Iowa, 469; *People* v. *Mather*, 4 Wend. 230; *People* v. *Hackley*, 24 N. Y. 84; *People* v. *Sharp*, 107 id. 427; 1 Burr's Trial, 245.) The question was fully discussed at an early day by Chief Justice MARSHALL on the trial of Aaron Burr, and every phase of it so completely explained and exhausted that his views were followed in the subsequent decisions. A single quotation from the language used will illustrate the scope and extent of the immunity which the witness can lawfully claim : "Many links frequently compose that chain of testimony which is necessary to convict an individual of a crime. It appears to the court to be the true sense of the rule that no witness is compelled to furnish any one of them against himself. It is certainly not only a possible, but a probable case, that a witness by disclosing a single fact may complete the testimony against himself and to a very effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. That fact of itself would be unavailing, but all other facts without it would be insufficient. While that remains concealed in his

1894.]     People ex rel. Taylor *v.* Forbes.     229

N. Y. Rep.]     Opinion of the Court, per O'Brien, J.

own bosom he is safe, but draw it from thence and he is exposed to a prosecution. The rule that declares that no man is compellable to accuse himself would most obviously be infringed by compelling a witness to disclose a fact of this description. * * * "

All the leading authorities were elaborately reviewed in the recent case of *Counselman* v. *Hitchcock* (*supra*) in the Supreme Court of the United States. In that case the grand jury was engaged in the investigation of certain alleged offenses by railroad companies against the recent act of Congress for the regulation of interstate commerce, and the witness, a commission merchant and dealer in grain, refused to answer certain questions as to the tariff of rates allowed to him by some of the railroads, on the ground that it might tend to criminate him. The case in all its essential features was similar to this, and the court, sustaining the privilege contended for in behalf of the witness, held that the object of the constitutional provision was to insure that a person shall not be compelled, when acting as a witness in any investigation, to give testimony which may tend to show that he himself has committed a crime, and that its meaning was that a witness is protected from any compulsory disclosure of the circumstances of his offense, or the source from which, or the means by which, evidence of its commission, or of his connection with it, may be obtained, or made effectual for his conviction, without using his answers as direct admissions against him. This conclusion was reached, although there is a general Federal statute providing that in such cases the testimony given by the witness at the investigation shall not be given in evidence against him, subsequently, in any civil or criminal proceeding. (U. S. R. S. § 860.) It seems that in such cases nothing short of absolute immunity from prosecution can take the place of the privilege by which the law affords protection to the witness. The testimony which the relator voluntarily gave before the grand jury, in general terms exonerating himself from all connection with the transaction, seems to have had great weight with the learned trial judge. It was argued that the relator

could not possibly be put in peril by his answer to the question, since he had already testified that he had no connection with the transaction. But this conclusion was not warranted by the facts. The testimony of the witness might be ever so strong and clear in favor of his innocence, but it did not conclude the public prosecutor, in the absence of some constitutional or statutory provision securing the relator from prosecution. The general statements of a person charged with crime in regard to his innocence avail but little against incriminating facts and circumstances. His protestations of innocence and his broad general denial of any knowledge of or connection with the transaction might be overcome by facts and circumstances, if the district attorney could be permitted to draw them from the witness. Any one who has had much experience in the conduct of criminal trials is aware of the fact that, frequently, the most dangerous proof that a person charged with crime has to meet, are his own statements made for the purpose of warding off suspicion or of satisfying others with regard to his innocence. It is not unusual on such trials to confront the accused with his own declarations made for the very purpose of exonerating himself from all suspicion, but which, when all the evidence is collected, are so far at war with all the facts and circumstances as to furnish evidence of guilt. The witness, by answering the general questions as to his connection with the affair, whether his answers were true or false, did not waive his right to remain silent when it was sought to draw from him some fact or circumstance which in his judgment might form another link in the chain of facts and capable of being used under any circumstances to his detriment or peril. The circumstances relating to the purchase of the jugs and the means employed to place them under the banquet room were important as furnishing a clue that might lead to the identification of the guilty person or persons, and the witness was or appeared to be so related to the transaction that he might lawfully refuse to furnish the same, notwithstanding his general statements to the effect that he had nothing whatever to do with them. The witness who

1894.]     People ex rel. Taylor *v.* Forbes.     231

N. Y. Rep.]     Opinion of the Court, per O'Brien, J.

knows what the court does not know, and what he cannot disclose without accusing himself, must in such cases judge for himself as to the effect of his answer, and if, to his mind, it may constitute a link in the chain of testimony, sufficient to convict him, when other facts are shown, or to put him in jeopardy, or subject him to the hazard of a criminal charge, indictment or trial, he may remain silent. While the guilty may use the privilege as a shield it may be the main protection of the innocent, since it is quite conceivable that a person may be placed in such circumstances, connected with the commission of a criminal offense, that if required to disclose other facts within his knowledge he might, though innocent, be looked upon as the guilty party. (*Adams* v. *Lloyd*, 3 H. & N. 363.)

But it is urged that the relator made use of the privilege, not in good faith, for his own protection from any peril, actual or apprehended, but as a pretext for shielding his friends or associates, and that the facts and circumstances before the learned judge presiding at the Oyer and Terminer were of such a nature as to warrant him in so deciding as a matter of fact, and that such finding is not reviewable here. The weight of authority seems to be in favor of the rule that the witness may be compelled to answer when he contumaciously refuses, or when it is perfectly clear and plain that he is mistaken, and that the answer cannot possibly injure him, or tend in any degree to subject him to the peril of prosecution. But the courts have recognized the impossibility in most cases of anticipating the effect of the answer. Where it is not so perfectly evident and manifest that the answer called for cannot incriminate, as to preclude all reasonable doubt or fair argument, the privilege must be recognized and protected. (*Janvrin* v. *Scammon*, 29 N. H. 280.) In this case, however, considering the relation of the witness to the subject of the inquiry, and the character and scope of the questions, such a conclusion was not possible. There is no evidence in the record that can, in any reasonable view, sustain such a finding. Our conclusion is that the relator was not guilty of con-

tempt in refusing to answer the questions, and this renders it unnecessary to consider the question whether the witness was in the immediate presence and view of the court so as to authorize it to proceed summarily.

The order of the General Term and the determination of the Court of Oyer and Terminer should be reversed and the relator discharged.

All concur, except ANDREWS, Ch. J., not sitting, and FINCH, J., not voting.

Ordered accordingly.