Production of copy of ordinance by city clerk, with certificate of passage, record and publication attached, is, in absence of objection, sufficient proof of ordinance. People v. Wilson, 41 S. R. 765.

---

## Supreme Court—General Term—Fifth Department.

December 28, 1895.

## PEOPLE ex rel. JOHN LAIRD v. JOHN W. HANNAN, as Sheriff, etc.

(73 S. R. 246.)

1. Criminal law—Information.

An information, which does not designate any crime or any of the elements of a particular crime, does not answer requirements of section 145 of Code of Criminal Procedure.

2. Same.

An information charging, upon information and belief that, on divers days within the last two years at a certain place, divers persons, whose names are unknown, wrongfully and unlawfully did catch and take certain fish in a manner and by means other than angling, to wit, with nets, in violation of the game laws of this state, is insufficient to give the justice jurisdiction of the subject-matter of any crime, or to authorize him to conduct any investigation.

3. Same—Subpoena.

In such case, he is wholly without authority to subpoena a witness or to examine him under oath, or to compel him to answer.

Appeal from an order discharging relator on habeas corpus.

On or about the 31st day of May, 1895, one Edwin I. Brooks made complaint before Edwin C. Smith, a justice of the peace in and for the town of Brighton, Monroe county, that the game laws of the state had been violated within the county by divers persons to him unknown, and asked that subpoenas be issued for certain persons named in the information sworn to by him. The relator was not one of the persons so named. The justice thereupon issued subpoenas to various persons, one of which was served upon the relator, and pursuant thereto he duly appeared before the justice, on the 4th day of June, 1895. After being sworn as a witness in a "criminal action prosecuted by the people of the state of New York against John Doe and others," the relator was asked the following question: "Have you, within the last two years, seen any person using any gill net, or any illegal devices, for the purpose of taking fish in Irondequoit Bay or Creek, other than yourself." The witness declined, under the advice of counsel, to answer the question, upon the ground that his answer might tend to incriminate him, whereupon the justice directed the witness to answer the question, and upon his refusal so to do, adjudged him guilty of a criminal contempt, and on the 5th day of June, 1895, sentenced him to imprisonment in the jail of Monroe county for the term of thirty days On the following day a writ of habeas corpus was issued by the special county judge of Monroe county, directed to the sheriff of Monroe county, requiring him to produce

the relator in court, and after hearing counsel for the relator and the people, an order was made discharging the relator from imprisonment.

H. H. Widner, Asst. Dist. Atty., for appellant.

Werner & Harris, for respondent.

ADAMS, J.—Section 619 of the Code of Criminal Procedure makes a refusal to testify a criminal contempt, the punishment for which is provided by section 852 et seq. of the Code of Civil Procedure. It is likewise provided, by section 2034 of the Code of Civil Procedure, that upon a return to a writ of habeas corpus, the judge or court shall not inquire into the legality of any mandate, judgment, decree, or final order; but subdivision 2 of section 2032 expressly excepts from the operation of the former section an order to punish for contempt, and the criminal contempt defined in section 8, and referred to in subdivision 3 of section 2032 relates only to courts of record. The judge was therefore at liberty to inquire into the validity of the proceeding before the magistrate in which the relator was committed, and a careful examination of the record shows very clearly that the information upon which the justice acted was wholly insufficient to confer jurisdiction upon him, and that, consequently, he was without authority either to subpoena the relator, or to compel him to testify, or to commit him for contempt. This feature of the case is commented upon so fully by the learned judge who granted the order as to leave no opportunity for this court to add anything thereto.

The order appealed from should be affirmed, with $10 costs and disbursements.

All concur.

The opinion of Special County Judge CARNAHAN was as follows:

The relator in his habeas corpus proceeding was committed to jail for contempt in refusing to answer a question propounded to him before a justice of the peace of the town of Brighton. An information, so called, upon the oath of Edwin I. Brooks, had been laid before the justice, charging, upon information and belief, "that, on divers days within the last two

years, at the town of Brighton, in this county, divers persons, whose names are unknown, wrongfully and unlawfully did catch and take certain fish, to wit, bass, perch, and pickerel, in a manner and by means other than angling, to wit, with nets, in violation of the game laws of this state." Thereupon the justice issued subpoenas to a number of persons, and, among others, to the relator. In response to the subpoena the relator appeared before the justice on the 4th day of June, 1895, whereupon he was asked the following question: "Have you, within the last two years, seen any person using any gill net, or any illegal device, for the purpose of taking fish in Irondequoit Bay or Creek, other than yourself?" The relator, having declined to answer the question, was committed.

Passing by certain minor objections to the commitment, which do not seem to me to be well taken, the main question remains, whether the justice had jurisdiction, upon the information laid before him, to take any proceedings. It was claimed upon the argument that the subpoena was issued upon the information, and upon certain depositions of other persons taken before the justice on the 1st day of June. It does not appear, however, whether the subpoena was issued before or after those depositions were taken, and that this claim was an afterthought appears from the recitals in the commitment, wherein it is stated that the relator was subpoenaed pursuant to the said information. Section 145 of the Code of Criminal Procedure defines an information as "the allegation made to magistrate that a person has been guilty of some designated crime." Section 148 of the Criminal Code provides that when an information is laid before a magistrate, of the commission of a crime, he must examine upon oath the informant or prosecutor, and any witnesses he may procure, etc. For the purpose of examining such witnesses, the magistrate has power to issue subpoenas. There may be two stages in the proceeding for the arrest of a person charged with an offense; the first stage consisting of the investigation preliminary to the issuing of the warrant, and the second the issue of the warrant upon the original information, supplemented by the depositions of witnesses taken. While the Code provides that an information shall

allege that a person has been guilty of some "designated" crime, yet it is clear that it does not contemplate that the information shall in all cases show all that is necessary to authorize an arrest. But there should be sufficient particularity to at least point to the commission of a "designated" crime, and to make it probable that further investigation would lead to the discovery of a "designated" crime; and a crime is not designated within the language of this section of the Code by simply naming a class of offenses. Some item of the approximate place or the approximate time of the commission of an offense should be given, or an indication of the supposed offender.

The information in question does not answer these require-ments, as it does not designate any crime or any of the elements of a particular crime. It amounts only to a statement of the belief of Brooks that, at some indeterminate time within two years, at some indeterminate place in the town of Brighton, by some person unnamed and undescribed in any way, an offense against the game laws was committed. It is, of course, quite possible that there have been breaches of the game laws in the town of Brighton, as in other towns of the country. Likewise, it is probably a fact that, within the last two years, the crime of petit larceny has been repeatedly committed in the city of Rochester, and has not been punished; but, would a magistrate, that allegation having been laid before him under oath, have power to investigate the entire city of Rochester? If the contention of the defendant in this case is correct, then any man may lay an information before a magistrate, charging that it is his belief that some particular class of crimes has been committed within the period of statutory limitation within a particular locality. He need have no basis for his belief other than his experience of the frailties of human nature; and yet, upon such information, a magistrate could, by compulsory process, drag every citizen of that region before him to tell whether he has any knowledge of the commission of any such crime; and it seems to me apparent that some such drag-net method of investigation was adopted in this case, else why was such a broad question put to the relator? Undoubtedly, the officers charged with the due execution of the game laws have arduous

duties to perform. Quite probably it is very difficult to discover evidence upon which to make arrests and gain convictious. And I do not thiuk they should be allowed tbis method of surmounting their difficulties. While it is of great importance that the laws should be enforced, it is of just as great importance that the exercise of inquisitorial power should be prevented.

The defendant, to sustain his position, cites the case of People v. Hicks, 15 Barb. 153. But in that case the comptroller of the city of New York made oath that, from the examination of documents in his possession in his official capacity, criminal frauds had been committed upon the public treasury of the city, and he stated the particular character of one of the frauds charged as a specimen of the nature and character of others shown in the documents. Such an information would be amply sufficient to authorize further investigation, and the case cited is an authority for the proposition that such proceedings as are above described in this case should not be tolerated.

The information in this case was insufficient to give the justice jurisdiction of the subject-matter of any crime, or to authorize him to conduct any investigation. He was, therefore, wholly without authority to subpoena the relator, or to examine him under oath, or to compel him to answer. The relator should be discharged from custody.

## NOTE ON "CONTEMPT FROM DISOBEDIENCE OF SUBPOENA OR REFUSAL TO TESTIFY."

Section 619 of Criminal Code makes a disobedience to a subpoena, or refusal to be sworn or testify, a criminal contempt. People ex rel. Munsell v. Court, etc., 101 N. Y. 251.

Disobedience of a subpoena is not, under our statute, a criminal offense, punishable by indictment. Sherwin v. People, 92 N. Y. 415; 3 N. Y. Cr. 524.

Section 619 of Criminal Code includes only proceedings for the punishment of a witness, who disobeys a subpoena or refuses to be sworn or testify in a criminal case. People ex rel. Munsell v. Court, etc., 36 Hun, 280; People ex rel. Taylor v. Forbes, 143 N. Y. 219; 62 S. R. 176; 38 N. E. 303; rev'g 59 S. R. 887, which aff'd 60 id. 139.

It provides that, for disobedience to a subpoena, the witness may be punished in the way prescribed by the Civil Code. People ex rel. Web-

ster v. Van Tassell, 64 Hun, 450; 46 S. R. 583; 19 Supp. 644; People ex rel. Taylor v. Forbes, 143 N. Y. 219; 62 S. R. 176; 38 N. E. 303; rev'g 59 S. R. 887, which aff'd 60 id. 136.