(39 Misc. Rep. 456.)

### PEOPLE ex rel. LEWISOHN v. WYATT, Justice.

### SAME v. O'BRIEN, Sheriff, et al.

(Supreme Court, Special Term, New York County. December, 1902.)

**1.** GAMING—INFORMATION—SUFFICIENCY.

An information by the district attorney alleging that in the city and county of New York on January 1, 1901, and thereafter continuously until December 1, 1901, one C. did, at said city, in premises described by street number, use, and allow to be used, certain rooms for the purposes of gambling, is sufficient, under Code Cr. Proc. § 148, providing for the punishment of such offense, to confer on a magistrate jurisdiction to inquire into the charge, and subpœna and examine witnesses.

2. CRIMINAL LAW—EXAMINATION AS TO INFORMATION—EXCLUDING PUBLIC.
   On examination by a magistrate as to an information charging a certain person with keeping a gaming house, the magistrate may exclude the public.

3. SAME—REFUSAL TO ANSWER QUESTIONS.
   Where a witness at an investigation by a magistrate to determine whether a warrant shall issue against one accused of keeping a gambling house refuses to answer a proper question, he is guilty of a misdemeanor.

4. SAME.
   On an investigation before a magistrate as to an information for gaming, that a question put to a witness, if answered, might afford a basis for fastening the crime of gaming on the witness, is no ground for refusing to answer, as the indemnity given by Pen. Code, § 342, overcomes the objection that the constitution provides that no person shall be compelled in a criminal case to be a witness against himself.

5. SAME—CONSTITUTIONAL LAW.
   On an investigation before a magistrate, under the laws of the state of New York, on an information, a witness cannot claim any immunity under the rule of the federal court in regard to the privilege of a witness, as declared in construing Const. U. S. Amend. 5, as the scope of such amendment, which did not, when it was passed, restrict the powers of the states, was not enlarged by the fourteenth amendment, providing that no state shall pass any law abridging the privileges of citizens.

Certiorari by the people, on the relation of Jesse Lewisohn, against William E. Wyatt, a justice, to review the issuance of a warrant for the arrest of relator; and habeas corpus by the same relator against William J. O'Brien, as sheriff, and others. Writs dismissed.

Hoadly, Lauterbach & Johnson (Alfred Lauterbach, of counsel), for relator.

William Travis Jerome, Dist. Atty., for respondents.

SCOTT, J. The relator, by writs of certiorari and habeas corpus, seeks to review the action of the respondent Wyatt, a justice of the special sessions, in issuing a warrant for his arrest upon an information charging him with a misdemeanor, in that he unlawfully refused to answer a question put to him upon a criminal proceeding pending before said justice. The questions raised upon the return to the writs have been elaborately argued. It was stated upon the argument, both in behalf of the district attorney and by counsel for the relator, that it was deemed that the questions thus argued were of such importance that it was desirable that the opinion of the appellate courts should be obtained thereon as speedily as possible. I shall not, therefore, attempt to discuss any of the numerous questions at any considerable length, but shall content myself with stating as briefly as possible the conclusions at which I have arrived.

The proceeding in the course of which the relator refused to answer was an investigation conducted by the respondent Wyatt, sitting as a magistrate, upon a sworn information presented to him by the district attorney of this county. In that information the district attorney alleged, upon information and belief, that in the city of New York, in the county of New York, on the 1st day of January, 1901, and thereafter continuously until the 1st day of December, 1902, one Richard A. Canfield did, at the city of New York, in the premises known as No. 5 East Forty-Fourth street, in the borough of Manhattan,

use certain rooms, and allow them to be used, for the purposes of gambling. The relator insists at the outset that this information is not sufficient to invest the magistrate with jurisdiction to proceed with an investigation into the truth of the allegations; resting this contention upon People v. Hannah, 92 Hun, 476, 37 N. Y. Supp. 703. The information which was condemned in that case was quite different from that in the case at bar. Section 145, Code Cr. Proc., defines an information as an "allegation made to a magistrate that a person has been guilty of a designated crime." The defect found in the information in the case cited by the relator was that it did not charge any person, or designate any crime, or state even approximately the time and place when any crime was committed. The present information names the person accused, designates the crime of which he is accused, and the place where such crime is said to have been committed, and the dates between which the accused is said to have continuously committed the criminal act. The information upon which the respondent Wyatt acted was sufficient to confer jurisdiction upon him to examine witnesses, under section 148, Code Cr. Proc. Blodgett v. Race, 18 Hun, 132; People v. Hicks, 15 Barb. 154.

It is further objected that the magistrate was without authority to exclude the public from his inquiry into the truth of the allegations contained in the information. This precise question was raised and decided adversely to the relator's present contention in People v. Cornell, 6 Misc. Rep. 568, 27 N. Y. Supp. 859. I see no reason to question either the authority or the reasoning of this decision. The relator argues with much ingenuity that a refusal to testify before a committing magistrate is not punishable by indictment under section 143, Pen. Code. That section provides that a person who commits a contempt of court of any one of several kinds is guilty of a misdemeanor. Among the acts specified by this section as contempts is "contumacious and unlawful refusal to be sworn as a witness, or after being sworn, to answer any legal and proper interrogatory." Subdivision 6, section 148 of the Code of Criminal Procedure, requires a magistrate, before whom an information is laid, to examine the witnesses produced by the prosecutor, and section 608 of the same Code authorizes him to issue subpœnas for such witnesses. If, then, the information laid before the respondent Wyatt was sufficient to invest him with jurisdiction to inquire whether the crime alleged had really been committed, he had jurisdiction to issue a subpœna for the relator, and to require him to be sworn as a witness, and to answer such proper questions as were put to him; and for a refusal so to answer the relator was guilty of a misdemeanor. It does not matter whether or not, under section 609 of the Code of Criminal Procedure, he might also be proceeded against under section 856 of the Code of Civil Procedure, for it is expressly declared by section 680 of the Penal Code that a criminal act is none the less punishable as a crime because it is also declared to be punishable as a contempt of court. It remains to be considered whether the relator was justified in declining to answer the question that was put to him. As has been said, the information, in effect, charges one Canfield with keeping a gambling house at No. 5 East Forty-Fourth street. The relator, having testified that he knew Canfield, was asked,

and refused to answer, the question whether he had ever been in the premises said to have been occupied as a gambling house. His refusal to answer was distinctly placed upon the ground that to answer the question might tend to criminate him. The provisions of the Penal Code respecting gambling are very stringent, and make it a crime, under certain circumstances, for any person to participate in a gambling game. It was assumed on the argument, and may be accepted as true for the purposes of this decision, that, while to answer the question would not of itself require the relator to confess to a crime, yet his answer might afford the prosecutor some facilities for fastening the crime of gambling upon him; supplying, perhaps, the necessary link in the chain of evidence required to convict him. The provision of law under which the relator undertakes to defend his refusal to testify is found in section 6 of article 1 of the constitution of this state, which provides that no person "shall be compelled in any criminal case to be a witness against himself." There are certain crimes, of which gambling is one, which are usually committed under such safeguards of secrecy and precaution that it is difficult for a prosecuting officer to obtain evidence concerning them unless he can compel those who have participated in the offense to testify thereto. To meet this difficulty, section 342 of the Penal Code provides that "no person shall be excused from giving testimony upon any investigation or proceeding for a violation of this chapter [relating to gambling], upon the ground that such testimony would tend to convict him of a crime; but such testimony cannot be received against him upon any criminal investigation or proceeding." It is urged that the immunity offered by the statute is only partial; that, though the witness' own testimony cannot afterward be used against him, he may nevertheless be compelled to disclose matter which will lead to his prosecution, or to reveal the existence of evidence, other than his own testimony, which may secure his conviction. This objection was raised, and directly passed upon by the court of appeals of this state, in People ex rel. Hackley v. Kelly, 24 N. Y. 74, and was overruled. In that case the same constitutional provision was invoked by the relator, and he was met by a similar statute of indemnity. In an opinion by Judge Denio, concurred in by all the members of the court, it was said:

"It is, no doubt, true that a precise account of the circumstances of a given crime would afford a prosecutor some facilities for fastening the guilt upon the actual offender, though he were not permitted to prove such account upon the trial. The possession of the circumstances might point out to him sources of evidence which he would otherwise be ignorant of, and in this way the witness might be prejudiced. But neither the law nor the constitution is so sedulous to screen the guilty as the argument supposes. If a man cannot give evidence upon the trial of another person without disclosing circumstances which will make his own guilt apparent, or at least capable of proof, though his account of the transactions should never be used as evidence, it is the misfortune of his condition, and not any want of humanity in the law."

This case was cited and accepted as a true exposition of the law as late as 1887, in People v. Sharp, 107 N. Y. 427, 14 N. E. 319, 1 Am. St. Rep. 851. It stands, therefore, as the law of this state, as declared by its highest appellate tribunal, that such indemnity as is extended to a witness by section 342 of the Penal Code meets and over-

comes the privilege or protection afforded him by the constitution.
I am not unmindful of the fact that in a later case (People v. Forbes,
143 N. Y. 219, 38 N. E. 303) there are expressions in the opinion which
seem to indicate that the court was disposed to accept the broader
rule now established in the federal courts, but there was no question in
that case of any statute of indemnity, and therefore the question rais-
ed in this proceeding was not presented.   I therefore find myself con-
strained to follow the rule, still unreversed and unmodified, which was
declared by the court of appeals in the Hackley Case, supra.

It was conceded upon the argument, and cannot be doubted, that
the rule in the federal courts is much more liberal to a witness.   The
phraseology of the federal constitution is the same as that of the con-
stitution of this state.   Respecting that provision, the supreme court
of the United States has held that no statute defeats the privilege to a
witness of refusing to testify, unless it affords absolute immunity
against future prosecution for the offense to which the question re-
lates.   Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35
L. Ed. 1110.   The reasoning by which the court arrives at this conclu-
sion is very persuasive, but as it is in direct conflict with the law of this
state, as declared by the court of appeals, it is not controlling upon this
court, unless the relator is entitled to take refuge behind the federal
constitution as well as our own.   The claim exempting a witness from
furnishing evidence against himself is to be found in the fifth amend-
ment to the federal constitution.   It is quite well settled that the first
10 amendments to the constitution contained no restrictions upon the
powers of the state, but were intended to operate solely on the federal
government.   Brown v. New Jersey, 175 U. S. 174, 20 Sup. Ct. 77,
44 L. Ed. 119.   The relator, therefore, can claim no immunity under
the federal constitution, unless the fifth amendment has been so ex-
tended in the scope of its operation as to cover the case of a witness
called to answer before a state magistrate pursuing an inquiry under
a state law.   It is contended that such has been the effect of the four-
teenth amendment to the federal constitution, which provides that "no
state shall make or enforce any law which shall abridge the privileges
or immunities of citizens of the United States, nor shall any state
deprive any person of life, liberty or property without due process
of law, nor deny to any person within its jurisdiction the equal protec-
tion of the law."   It is urged by the relator, as it has frequently been
urged by others, that this amendment has operated to render the pro-
visions of the first 10 amendments applicable to the several states,
because these latter confer certain privileges and immunities upon cit-
izens of the United States, which by the fourteenth amendment the
states are prohibited from abridging.   This contention has frequently
been made before the supreme court of the United States, but has
never met with the assent of that court.   On the contrary, the gen-
eral trend of the decisions of the court is rather to negative any such
proposition.   Hurtado v. California, 110 U. S. 516, 4 Sup. Ct. 111,
28 L. Ed. 232.; Maxwell v. Dow, 176 U. S. 581, 20 Sup. Ct. 448, 494,
44 L. Ed. 597; Missouri v. Lewis, 101 U. S. 31, 25 L. Ed. 989; In re
Kemmler, 136 U. S. 448, 10 Sup. Ct. 930, 34 L. Ed. 519.

My conclusions, therefore, are that the information laid before the

respondent Wyatt was sufficient to invest him with jurisdiction to inquire into the truth of its allegation; that, having acquired jurisdiction, he had power to exclude the public from the inquiry, to supœna the relator, and require him to be sworn and to testify; that while the question put to the relator, and which he refused to answer, might tend to criminate him, within the meaning of the constitution, but for section 342 of the Penal Code, yet that section furnished him all the immunity which the constitution requires; that the question was therefore one which should have been answered, and that relator's refusal to answer was contumacious and unlawful, and such as is declared by section 143 of the Penal Code to be a misdemeanor; and, finally, that the relator cannot excuse his refusal to answer by invoking the fifth amendment to the federal constitution. The result is that the writs must be dismissed, and the relator remanded.

Writs dismissed and relator remanded.