CHAPPELL v. CHAPPELL.

(Supreme Court, Appellate Division, Fourth Department. December 28, 1906.)

DISCOVERY—PRIVILEDGE OF WITNESS—INCRIMINATING MATTERS.

Defendant, in an action by an administrator to recover property claimed to have belonged to decedent at his death and to have been fraudulently obtained and disposed of by defendant and to be concealed and withheld from plaintiff, may not be compelled to be examined as to such matters, he declining to answer on the ground that his answers will tend to accuse him of a crime; Const. art. 1, § 6, providing that no person shall be compelled in a criminal case to be a witness against himself, and Code Civ. Proc. § 837, providing that a provision therein shall not require a

witness to give an answer which will tend to accuse him of a crime or to expose him to a penalty, and Pen. Code, § 142, providing that no person shall be excused from testifying in any civil action, or legal proceeding, to any facts showing that a thing in action has been bought, sold, or received contrary to law, on the ground that his testimony might tend to convict him of a crime, but no evidence derived from his examination shall be received against him on a criminal prosecution, even if applying to such a case, which its history does not tend to show, being insufficient to protect him, as his testimony might disclose other evidence sufficient to convict him.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 16, Discovery, §§ 56, 58; Cent. Dig. vol. 50, Witnesses, §§ 1026–1037.]

McLennan, P. J., dissenting.

Appeal from Special Term, Livingston County.

Action by Benjamin F. Chappell, administrator of James W. Chappell, deceased, against Sheldon Chappell. From an order directing defendant to appear before a referee named and be further examined, he appeals. Reversed, and motion denied.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Fletcher C. Peck, for appellant.
Albert H. Stearns, for respondent.

SPRING, J. The plaintiff, as administrator of James W. Chappell, deceased, commenced this action, as his affidavit discloses, to recover stock certificates, bonds, and other personal property, or the avails thereof, which, it is claimed, belonged to said decedent at the time of his death, but which were fraudulently obtained by the defendant and are concealed and withheld from the plaintiff. An order was granted ex parte upon the application of the plaintiff requiring the defendant to appear before a referee to be examined for the purpose of enabling the plaintiff to prepare his complaint. The order was sweeping in its scope, requiring the defendant to state in detail the amount and kind of certificates of stock and other property owned by the intestate, the dates of transfer, to whom transferred, the consideration, and the investment or reinvestment of the proceeds. The defendant appeared pursuant to the order, was examined, and testified that the decedent in 1901 owned 80 shares of stock of the Western Union Telegraph Company and 50 shares of the stock of the Morris & Essex Railroad Company, which comprised substantially all his personal property, and at that time these shares of stock were transferred by the decedent. The witness was then asked to whom the transfer was made, but declined to answer for the reason that:

"This action having been brought to recover for certain property alleged by the plaintiff to have belonged to plaintiff's intestate in his lifetime, and to have been obtained from said intestate in his lifetime by the witness, without right and by false representations and without consideration, the answer of the witness will tend to accuse him of a crime."

A series of questions were then propounded to him for the purpose of eliciting information as to the transfer of these shares of stock, and the transfer of the balance in the bank to the credit of the intestate; and to each of these questions the witness declined to answer for the

reason stated. Upon the presentation of the report of the referee to the Special Term, pursuant to section 880 of the Code of Civil Procedure, disclosing the refusal of the witness to answer, the order appealed from was granted on the 30th of July, 1906. It requires the defendant to appear before the referee and be examined as to all the property owned by James W. Chappell since January 1, 1900, its transfer to whom, and upon what consideration. In addition to the general character of the examination, a large number of specific questions are contained in the order to be propounded to the defendant upon the examination, intended to probe fully transactions pertaining to the transfer of these certificates of stock and the bank deposit, the defendant's disposition and control of the same, to whom transferred, for what purpose, upon what consideration, and in what circumstances. The defendant is charged with fraudulently acquiring and fraudulently disposing of the property of the decedent, and the effect of the charge is to accuse him of a crime. The attempt to require him to give answers which may amount to a confession of a crime is within the express condemnation of section 837 of the Code of Civil Procedure and violative of the organic law, insuring immunity to the citizen from self-accusation. United States Constitution, art. 5; State Constitution, art. 1, § 6. These provisions have unvaryingly received liberal judicial interpretation, and have been included among the most important enactments protecting personal rights. People ex rel. Taylor v. Forbes, 143 N. Y. 219–227, 38 N. E. 303 et seq.; Matter of Peck v. Cargill, 167 N. Y. 391–395, 60 N. E. 775, 53 L. R. A. 888; People ex rel. Lewisohn v. O'Brien, 176 N. Y. 253, 68 N. E. 353; Burr's Trial, vol. 1, p. 245.

The defendant did not challenge the order requiring him to appear and be examined, but, when the examination was directed to the transactions which it is claimed constituted the fraudulent acquisition and disposition of this property, he availed himself of his privilege. The right to interpose the bar to these inquiries was accorded to him by the fundamental law, and he alone was given the right to determine whether his liberty might be put in peril if he answered the questions. As was said in People ex rel. Taylor v. Forbes, 143 N. Y., at pages 230, 231, 38 N. E., at page 306:

"The witness who knows what the court does not know, and what he cannot disclose without accusing himself, must in such cases judge for himself as to the effect of his answer, and if, to his mind, it may constitute a link in the chain of testimony sufficient to convict him, when other facts are shown, or put him in jeopardy, or subject him to the hazard of a criminal charge, indictment, or trial, he may remain silent. While the guilty may use the privilege as a shield, it may be the main protection of the innocent, since it is quite conceivable that a person may be placed in such circumstances, connected with the commission of a criminal offense, that, if required to disclose other facts within his knowledge, he might, though innocent, be looked upon as the guilty party."

It may be, if it was apparent that the refusal to answer was a mere pretext, the excuse would not avail the witness (People ex rel. Lewisohn v. O'Brien, 176 N. Y. 253–266, 68 N. E. 353); but in the present instance there is nothing to impugn the reasonableness of the declination to answer, and the defendant comes fairly within the privilege which he has raised.

Section 142 of the Penal Code reads as follows:

"No person shall be excused from testifying, in any civil action, or legal proceeding, to any facts showing that a thing in action has been bought, sold or received contrary to law, upon the ground that his testimony might tend to convict him of a crime. But no evidence derived from the examination of such person shall be received against him upon a criminal prosecution."

It is contended that this provision applies to the present case. This section is contained in a chapter devoted to "offenses against public justice," and, with the other associated sections, is a substitute for the provisions of the Revised Statutes pertaining to the purchase of claims by attorneys, justices, and constables with a view to their collection. The provision that the testimony of the witness in this class of cases shall not be used against him in a criminal prosecution was contained in the Revised Statutes from an early period. Laws 1818, p. 278, c. 259, § 2; Rev. St. 1829, pt. 3, c. 3, tit. 2, art. 3, § 82; Rev. St. (Banks & Bros.' 6th Ed.) pt. 3, c. 3, tit. 2, art. 3, § 70. When the Penal Code was adopted, these provisions were embodied in chapter 7 with the title already stated. The commissioners in their explanatory note (see Report of Commissioners, Penal Code 1865, p. 66) say:

"The commissioners have retained in the Penal Code the various provisions of the existing law, whereby, in respect to particular crimes, the privilege to refuse to testify is removed; e. g., in respect to buying demands for suit, duelling, etc. But they have added no new provisions of this character."

That section does not assume to abrogate section 837 of the Code of Civil Procedure, and should not be extended beyond its restricted signification.

Passing that, however, the Legislature has no authority to override the constitutional mandate protecting the witness from furnishing evidence which may be made the basis of a criminal prosecution against him. Nor does the provision inhibiting the reception of the evidence against him upon a criminal prosecution permit the examination. It may afford no immunity to him whatever. His own testimony may disclose the connection of other persons with the transactions and reveal facts which may tend to fasten the crime upon him. In Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110, the facts show that the grand jury in the United States District Court for the Northern District of Illinois were investigating alleged infractions of the interstate commerce law. Counselman, engaged in the grain and commission business, was a witness before the grand jury, and questions were put to him which, if answered in the affirmative, would have shown that he had received rates below the tariff rates in the shipment of grain. He declined to answer on the ground that the answers "might tend to criminate him." He was subsequently adjudged to be guilty of contempt of court for refusing to answer, and was fined $500. Upon a review of the case, the United States Supreme Court in a very exhaustive opinion held he could not be compelled to answer. Section 860 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 661] provided that no evidence obtained from a witness in a judicial proceeding should be used against him in a criminal proceeding, and the language of the section was fully as

comprehensive as that contained in section 142 of the Penal Code referred to. The court held that this did not afford him adequate protection. The court add:

"This, of course, protected him against the use of his testimony against him or his property in any prosecution against him or his property, in any criminal proceeding, in a court of the United States. But it had only that effect It could not, and would not, prevent the use of his testimony to search out other testimony to be used in evidence against him or his property in a criminal proceeding in such court. It could not prevent the obtaining and the use of witnesses and evidence which should be attributable directly to the testimony he might give under compulsion, and on which he might be convicted, when otherwise, and if he had refused to answer, he could not possibly have been convicted."

This case was reviewed and followed in People ex rel. Lewisohn v. O'Brien, 176 N. Y. 253–261, 68 N. E. 353 et seq. In order to meet the criticism of the Counselman-Hitchcock Case, the Congress passed an act (Act Feb. 11, 1893, c. 83, 27 Stat. 443 [U. S. Comp. St. 1901, p. 3173]) providing that "no person shall be prosecuted or subjected to any penalty or forfeiture" on account of any testimony which he may give. After this amendment the question was again before the United States Supreme Court in Brown v. Walker, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819, and the court held by a bare majority that, in view of the absolute immunity from punishment provided by the statute, the witness was deprived of his constitutional right to refuse to answer. Four members of the court, even with this exemption from prosecution to protect the witness, dissented in exhaustive opinions.

In People ex rel. Taylor v. Forbes, 143 N. Y. 219, 38 N. E. 303, the court in analyzing the Counselman-Hitchcock Case referred to, and the effect of the statutory provision forbidding the giving in evidence against him of the testimony, uses this language, at page 229 of 143 N. Y., at page 306 of 38 N. E.:

"It seems that in such cases nothing short of absolute immunity from prosecution can take the place of the privilege by which the law affords protection to the witness."

It is suggested that the language of the constitutional provision mentioned only includes evidence given in a criminal case. In the first place, the constitutional provisions have been embodied in the Code of Civil Procedure, § 837, but no such restriction has been given to these constitutional guaranties. If a compulsory disclosure of incriminating testimony is permissible in a civil case or proceeding, then there may be very little protection in the statute for the witness. In Yamato Trading Co. v. Brown, 27 Hun, 248, the complaint alleged that the defendant had converted a quantity of silk belonging to the plaintiff. Upon affidavits showing that the defendant had acquired the silk by fraudulent representations as to his financial condition, an order for his examination was granted. On appeal from the order the court held that, if the affidavits were correct, the defendant was guilty of obtaining the goods by false pretenses, and that the defendant could not, therefore, be required to give an answer which would tend to accuse himself of a crime; citing section 837 of the Code of Civil Procedure. Of the same

purport is Kinney v. Roberts & Co., 26 Hun, 166, and Andrews v. Prince, 31 Hun, 233. There is a class of cases (like Ryan v. Reagan, 46 App. Div. 590, 62 N. Y. Supp. 39) holding that the determination of the question should be reserved until after the examination takes place; but these cases only give emphasis to the privilege accorded to the defendant. The defendant in the present instance declined to answer, and the order appealed from requires him to answer preliminary to punishing him for contempt. The pertinent provision in our Code of Civil Procedure is the section cited (837) inhibiting the examination where the answer may accuse the witness of a crime, and that section does not contain the provision that he may be required to testify and then give him immunity by prohibiting the use of the testimony against him. In any event, we assume that section will control in a proceeding of this kind unless there is some plain provision exempting it therefrom.

We do not share in the apprehension of disasters set forth in the dissenting opinion as the probable result of the decision we are about to make. We are not promulgating any new or startling principle. The right of a witness to refuse to answer when the answer may incriminate him is older than our nation, and has been one of the constitutional guaranties for more than a century, and has been sustained undeviatingly by the courts, and no calamity seems to have occurred because of it.

The order should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. So ordered. All concur, except McLENNAN, P. J., who dissents in an opinion.

McLENNAN, P. J. (dissenting). I am not convinced that the decision about to be rendered by this court as expressed in the prevailing opinion is not in accord with the decisions of the highest court of this state, yet the results which necessarily follow from such decision are so extraordinary as to lead me to dissent in the hope that the Court of Appeals may reconsider the entire question, and either modify the rule apparently enunciated, or else give it full force and effect, and declare that those who obtain property by fraud, false representations, or undue influence may know that they may not be questioned as to how they obtained such property, how it was transferred, or where it is, provided they assert upon inquiry in regard to such matters that the answers to such interrogatories might tend to incriminate them. No case could better illustrate the injustice of the rule which it is assumed has been adopted than the one at bar. In this case an executor brings an action to obtain possession of the property of which his testator died seised, and which it is alleged the defendant obtained possession of unlawfully and by undue influence. By this proceeding it is sought to be ascertained where the property left by the testator is, its character, and extent. The affidavit or petition alleges that all such facts are within the knowledge of the defendant, he practically having controlled the actions of the decedent, and had control of his property and securities for some years prior to his death. Inquiry is made as to the amount of such property received by him, what disposition was made, and where the same now is. The defendant refuses to answer any of the ques-

tions propounded upon the ground that such answers may tend to incriminate him, because, as suggested, if it be true that such property was obtained by him thus unlawfully, he was guilty of the crime of larceny.

The like suggestion would prevail, if sound, if the executor in this case had been asked to account for moneys or property received by him belonging to the estate of his testator. If he had converted such property to his own use or disposed of the same in violation of law, he would be guilty of a crime, and so would be excused from answering any questions in relation to the same. The like suggestion is applicable to an examination in supplementary proceedings, which from time immemorial have been regarded as a means of ascertaining what a judgment debtor has done with his property which it is believed should be applied in payment of his just debts. Such proceeding is founded upon the idea that the judgment debtor has fraudulently transferred his property to avoid the payment of his just debts, and yet such action on his part is made a crime. If the rule suggested in the prevailing opinion is to be adopted, then all such judgment debtor need do in order to block investigation as to the disposition of his property is to refuse to answer any questions propounded because his answers might tend to incriminate him. In those cases—and as it seems to us clearly in the case at bar by section 142 of the Penal Code—it is provided that the answers given shall not be used in any civil or criminal proceeding against the judgment debtor, but the contention is that that is not broad enough; that, in order that such information may be obtained, it is necessary that there should be a statute broad enough to give absolute immunity to the person required to answer. If this is the rule to be adopted and generally understood, it will practically paralyze the administration of justice. I have said enough to indicate the results which will inevitably follow from such rule, and, as above suggested, no case can better illustrate the results which may follow than the one at bar. An executor seeks to recover possession of the property of his testator which he alleges is unlawfully in the possession of another, and such other is excused under the rule enunciated from answering any question as to how he came into the possesion of such property or where it is, on the ground that the answers to such inquiries might tend to incriminate him.

The case at bar in and of itself is of comparatively little importance; but, as I understand its import, it means that no person holding property or funds unlawfully or in a fiduciary capacity can be compelled to disclose the nature of the possession of such property or its whereabouts or what disposition was made of the same to the knowledge of the person of whom inquiry is made, provided such person assumes to say in answer to any such interrogatories, "The answer might tend to incriminate me; therefore I refuse to answer." And therefore it is incompetent for any court or magistrate to inquire how or in what manner such answer might tend to incriminate. There should be no doubt as to the broad extent of the decision about to be rendered. There is hardly an act which a party may do or attempt to do fraudulently with respect to property which is not made a crime, and yet by the decision about to be rendered no inquiry can be made from the party charged

with such fraud as to the acquisition or disposition of such property, because the statutes have not yet granted to such fraudulent actor absolute and complete immunity.

These considerations lead me to vote for an affirmance of the order appealed . from.