## In re FRANKLIN SYNDICATE et al.

### (District Court, E. D. New York. May 8, 1900.)

**BANKRUPTCY—EXAMINATION—INCRIMINATING EVIDENCE.**

> Though a bankrupt may, under Bankr. Act 1898, § 7, subd. 9, be required to submit to examination as to what property he has, what disposition he has made of any property which the court is entitled to administer, to what persons he has paid money or delivered property, and where they are, and though such section provides that no testimony given by him shall be offered against him in any criminal proceeding, he will not be required to develop the whereabouts of papers which might be used against him in a criminal proceeding.

See 101 Fed. 402.

Howse, Grossman & Vorhaus and Robert Ammon, for bankrupt.
Belfer & Flash, for petitioning creditors against Franklin Syndicate.
Myers, Goldsmith & Bronner, for petitioning creditors against bankrupt.
Wingate & Cullen, for trustee.

THOMAS, District Judge. The referee has certified that the bankrupt, William F. Miller, has refused to answer certain questions relating to his estate. When he was first summoned to testify, on a former occasion, his trial upon a serious charge, growing out of business connected with his estate, was pending in the court of the state. Whatever the power of this court to compel an answer to the questions propounded to him at that time, there was a certain impropriety in the exercise of such power. His trial was had subsequently, upon one of many indictments against him, a conviction secured, and he is now under sentence. The reasons that existed at the former trial for suspending the examination demanded by the bankruptcy act have measurably passed, and there are certain questions in the record now presented to the court which the bankrupt should answer, and which apparently he may answer without detriment to any proceedings pending against him. The following are the questions which, upon his attempted examination on May 4, 1900, before the referee, the bankrupt

refused to answer, upon the ground that such answers would have a tendency to degrade, disgrace, or to incriminate him:

(1) "Q. What business did you carry on prior to November 23, 1899?" (2) "Q. Is there any information which you desire to give to the trustee in this proceeding which will assist him in the collection of any of the property which belonged to you on the 23d day of November, 1899?" (3) "Q. Do you know of the location or whereabouts of any property which belonged to you on the 23d day of November, 1899, besides a deposit in the Knickerbocker Trust Company, standing to your credit, a deposit with F. A. Torrey, a banker in Nassau street, the balance of the cash on hand at the time you closed your office on the 23d or 24th day of November, the office furniture and office fittings, a balance of $5.61 with Ferdinand B. Hesse, and the proceeds of any drafts, post office orders, express company orders, or checks which may have been received by you or for your benefit after November 23, 1899, which had not already been collected by you and reduced to cash?" (4) "Q. Have you in your custody or under your control, or in the custody or control of any of your agents, servants, attorneys, or persons in your employ, any property which belonged to you upon the 23d day of November, 1899, which was not on the 23d or 24th day of November, 1899, delivered by you to John L. Daly, your assignee?" (5) "Q. Have you in your possession or under your control, or in the possession or under the control of any of your agents, servants, attorneys, or persons in your employ, any property, of any manner, shape, or description, belonging to you on the 23d day of November, 1899, or which belonged to you at any time previous to the adjudication in bankruptcy in this proceeding?" (6) "Q. Mr. Miller, have you any papers, documents, letters, evidence of indebtedness, or memoranda of any kind in your possession or under your control which belonged to you or were in any way concerned for the carrying on of your business at 144 Floyd street, in the borough of Brooklyn?" (7) "Q. Do you know of any debts due to you?" (8) "Q. Have you a cause of action against anybody for an accounting for money had and received for your benefit?" (9) "Q. Does any one hold for your benefit an assignment of any property which you own, had possession or control of, after November 23, 1899?" (10) "Q. Where are the books of account kept by you in your business prior to November, 1899?" (11) "Q. Are those books now in your possession or under your control?" (12) "Q. Are there in existence any books showing your financial condition at any time during the months of November, December, or January of the years 1899 and 1900?" (13) "Q. Are you willing to assist the trustee in this case in any manner, shape, or form in the performance of his duties?"

It is considered that the court has power to compel an answer to certain of these questions, and that such power may be exercised without detriment to the defendant in any criminal proceeding which is now pending or may be instituted against him.

The refusal to answer the first question may be allowed to stand.

So as to the second and thirteenth questions.

The third question is objectionable, as it assumes certain facts, to which his assent is not necessary; but the question asked in the following form should be answered:

"Q. Do you know the location or whereabouts of any property which belonged to you on the 23d day of November, 1899? If so, state it all in detail."

The fourth question should be answered, excluding the assumed fact, that he had delivered certain property to John L. Daly, his assignee.

The fifth question seems unobjectionable in form and should be answered.

The sixth question should not be answered, as it calls upon the witness to testify as to papers, documents, letters, evidence of indebted-

ness, or memoranda in his possession, or under his control, which belonged to him or were in any way concerned in the carrying on of his business at 144 Floyd street, in the borough of Brooklyn. This evidence may be objectionable, as compelling the witness to develop the whereabouts of papers and documents which might be used against him in a criminal proceeding. Although the statute provides that his evidence given in proceedings in bankruptcy should not be used against him, this question calls for a discovery of documents which, when discovered, might be used against him. For that reason the question is not sustained.

There appears to be no reason for the refusal to answer the seventh question. So as to the eighth and ninth questions.

It also appears that the tenth, eleventh, and twelfth questions may well be answered without the objection above stated to the question relating to the discovery of papers, documents, letters, etc., provided the questions be limited to the usual books of account kept in the business, of which the court now has jurisdiction.

It is considered that the bankrupt should discover to this court what property he has, what disposition he has made of any property which the court is entitled to administer, to what persons he has paid money or delivered property, where such persons are, and questions of like nature. Subdivision 9 of section 7 of the bankruptcy act suggests the general nature of an examination to which the bankrupt may be subjected, and provides that no testimony given by him shall be offered in evidence against him in any criminal proceeding. The final clause of subdivision 9, section 7, is a complete protection to the witness, and no reason whatever exists, in view of such protection, for his refusal to answer suitable questions respecting his estate. While it is the purpose of the court to be entirely fair towards persons who are subject to criminal prosecution, the purposes of the bankruptcy act may not be defeated by the refusal to give evidence concerning his transactions, whereby property belonging to his estate may escape distribution to his creditors, and no refinement of argument will be permitted to save the bankrupt from giving evidence that shall tend to that result. It is considered that the examination of the bankrupt should be again taken up and conducted along the lines suggested, and, if there shall be persistent refusal to answer, proper proceedings should be instituted looking to the punishment of the bankrupt for contempt.