## MACKEL v. ROCHESTER.

### (Circuit Court of Appeals, Ninth Circuit. May 14, 1900.)

### No. 566.

BANKRUPTCY—EXAMINATION OF BANKRUPT—PRIVILEGE AGAINST SELF-CRIMINATING TESTIMONY.

In an action in the district court by a trustee in bankruptcy against a third person to recover the value of property alleged to have been fraudulently transferred to him by the bankrupt, the latter, being under examination as a witness, cannot refuse to answer questions relating to the transaction in suit, on the ground that his answers would tend to criminate him, his constitutional privilege against self-criminating evidence being secured by Bankr. Act 1898, § 7, subd. 9, which provides that a bankrupt, "at such times as the court shall order," shall submit to an examination concerning "his dealings with creditors and other persons and all matters which may affect the administration and settlement of his estate," but that "no testimony given by him shall be offered in evidence against him in any criminal proceeding."

In Error to the District Court of the United States for the District of Montana.

This cause is brought to this court upon the alleged error of the court below in refusing to require a witness to answer certain questions, and in directing a verdict for the defendant. It appears from the record that one Frederick A. Bartlett, residing at Butte, Mont., filed a petition in bankruptcy on February 8, 1899, and thereafter, in March, 1899, was duly adjudged a bankrupt. Alexander Mackel, the plaintiff in error, was elected trustee of the bankrupt's estate. On the 3d day of April, 1899, the trustee brought suit in the district court of the United States for the district of Montana, against the defendant in error, to recover the value of certain property alleged to have been sold by the bankrupt to the defendant in error within four months of the date of his petition to be adjudged a bankrupt, with the intent and purpose on the part of the said bankrupt to hinder, delay, and defraud his creditors. The property thus transferred consisted of a stock of merchandise alleged to have been of the value of over $8,563, and constituted all of the property of the said bankrupt not exempt from execution. It is alleged that the defendant in error took into his possession all of the said stock of goods, and converted the same to his own use, without paying a fair compensation for it, and that at the time of the pretended conveyance he knew that it was made by the said Bartlett with fraudulent intent, and that he had reasonable cause to believe that said Bartlett was then insolvent. The defendant, in his answer, avers that he bought said stock of goods in good faith, paying therefor the sum of $6,344.25, which amount was paid to said Bartlett on said 4th day of February, 1899, and constituted a fair consideration for said property, and denies any knowledge of Bartlett's insolvency or fraudulent intent in selling said property. At the close of the testimony for the plaintiff taken upon the trial of the cause, the defendant moved the court to instruct the jury to render a verdict for the defendant. This motion was based upon three grounds. The court sustained the motion upon the third ground,—that there was no evidence tending to show that the defendant, at the time of purchasing the said stock of goods, had reasonable cause to believe that the said Bartlett was insolvent, or contemplated going into bankruptcy, or had any intention to hinder, delay, or defraud his creditors, or any one. Judgment was accordingly entered for the defendant.

John A. Shelton, for plaintiff in error.
M. P. Gilchrist, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The assignments of error are 15 in number, 12 of which comprise refusals of the court to require the witness Frederick A. Bartlett to answer certain questions, and 3 relate to the peremptory instruction to the jury to return a verdict for the defendant, and in ordering judgment accordingly. The witness Bartlett declined to answer the questions referred to, upon the ground that the answer would tend to incriminate him, and the court instructed the witness that he might so refuse to answer, and that the witness was to be the judge as to whether or not the answer would tend to incriminate him. The act of July 1, 1898 (30 Stat. 544), provides, in section 2, that the district courts of the United States are made courts of bankruptcy, and invested, within their respective territorial limits, with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings in vacation, in chambers, and during their respective terms. This jurisdiction is defined generally and specifically in the section in 20 different paragraphs. The duties of the bankrupt under the authority of the court so empowered are set out in section 7 as follows:

"The bankrupt shall * * * (9) when present at the first meeting of his creditors, and at such other times as the court shall order, submit to an examination concerning the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and whereabouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate; but no testimony given by him shall be offered in evidence against him in any criminal proceeding."

This section thus provides for the production of the facts material and necessary to determine the issues in the settlement of the bankrupt's estate for the benefit of his creditors, by requiring the bankrupt to disclose all the evidence within his possession, and yet accords to him that immunity from penalty for compulsory incriminating disclosures which is guarantied by the constitution and by section 860 of the Revised Statutes, namely:

"No pleading of a party, nor any discovery or evidence obtained from a party or witness by means of a judicial proceeding in this or any foreign country, shall be given in evidence, or in any manner used against him or his property or estate, in any court of the United States, in any criminal proceeding, or for the enforcement of any penalty or forfeiture: provided, that this section shall not exempt any party or witness from prosecution and punishment for perjury committed in discovering or testifying as aforesaid."

It is further provided, in section 21 of the bankrupt act, with regard to the evidence that may be elicited in bankruptcy proceedings:

"A court of bankruptcy may, upon application of any officer, bankrupt, or creditor, by order require any designated person, including the bankrupt, who is a competent witness under the laws of the state in which the proceedings are pending, to appear in court or before a referee or the judge of any state court, to be examined concerning the acts, conduct, or property of a bankrupt whose estate is in process of administration under this act."

This section, together with section 7 above quoted, certainly provides for full and complete testimony by the bankrupt or any other person under examination by the court. This information is necessary for the speedy and equitable settlement of the estate. If the bankrupt is honest, his testimony cannot injure him. If dishonest, and his testi-

mony would tend to incriminate, the act provides immunity from criminal prosecution; and any personal odium that might be incurred from giving such testimony need not be considered. The law pro-, vides immunity from a legal penalty, not a moral penalty.

In the case of Brown v. Walker, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819, the petitioner, Brown, had been subpœnaed as a witness before the grand jury to testify in relation to a charge then under investigation by that body against certain officers and agents of the Allegheny Valley Railway Company for an alleged violation of the interstate commerce act. After testifying that he was the auditor of the railway company during the years 1894 and 1895, he was asked the question: "Do you know whether or not the Allegheny Valley Railway Company transported for the Union Coal Company, during the months of July, August, and September, 1894, coal from any point on the Low Grade Division of said railroad company to Buffalo at a less rate than the established rates in force between the terminal points at the time of such transportation?" He declined to answer, for the reason that his answer would tend to accuse and incriminate himself. He was also asked a question which involved the production of certain of his books of account, and declined to answer for the same reason. Various proceedings were had in the matter, and an appeal was finally taken by Brown to the supreme court of the United States. Mr. Justice Brown, in delivering the opinion of that court, said:

"This case involves an alleged incompatibility between that clause of the fifth amendment to the constitution which declares that no person 'shall be compelled in any criminal case to be a witness against himself,' and the act of congress of February 11, 1893, c. 83 (27 Stat. 443), which enacts that 'no person shall be excused from attending and testifying, or from producing books, papers, tariffs, contracts, agreements, and documents before the interstate commerce commission, or in obedience to the subpœna of the commission, * * * on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him, may tend to criminate him or subject him to a penalty or forfeiture. But no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing, concerning which he may testify. or produce evidence, documentary or otherwise, before said commission, or in obedience to its subpœna, or the subpœna of either of them, or in any such case or proceeding.' "

After some discussion of the statute and citation of cases, he says (page 605, 161 U. S., page 650, 16 Sup. Ct., and page 824, 40 L. Ed.):

"It is entirely true that the statute does not purport, nor is it possible for any statute, to shield the witness from the personal disgrace or opprobrium attaching to the exposure of his crime; but, as we have already observed, the authorities are numerous, and very nearly uniform, to the effect that, if the proposed testimony is material to the issue on trial, the fact that the testimony may tend to degrade the witness in public estimation does not exempt him from the duty of disclosure. A person who commits a criminal act is bound to contemplate the consequences of exposure to his good name and reputation, and ought not to call upon the courts to protect that which he has himself esteemed to be of such little value. * * * The design of the constitutional privilege is not to aid the witness in vindicating his character, but to protect him against being compelled to furnish evidence to convict him of a criminal charge. If he secure legal immunity from prosecution, the possible impairment of his good name is a penalty which it is reasonable he should be compelled to pay for the common good. If it be once conceded that the fact that his testimony may tend to bring the witness

into disrepute, though not to incriminate him, does not entitle him to the privilege of silence, it necessarily follows that if it also tends to incriminate, but at the same time operates as a pardon for the offense, the fact that the disgrace remains no more entitles him to immunity in this case than in the other. * * * If, as was justly observed in the opinion of the court below, witnesses standing in Brown's position were at liberty to set up an immunity from testifying, the enforcement of the interstate commerce law or other analogous acts,—for instance, the bankruptcy act,—wherein it is for the interest of both parties to conceal their misdoings, would become impossible, since it is only from the mouths of those having knowledge of the inhibited contracts that the facts can be ascertained. While the constitutional provision in question is justly regarded as one of the most valuable prerogatives of the citizen, its object is fully accomplished by the statutory immunity, and we are therefore of opinion that the witness was compellable to answer." (Page 610, 161 U. S., page 652, 16 Sup. Ct., page 825, 40 L. Ed.)

In the present case many of the questions which the witness refused to answer were of the ordinary character. For example: "Prior to the time of your filing your petition in this court asking to be adjudged a bankrupt, what, if any, business had you been engaged in?" "I'll ask you if you kept a set of books prior to the time you filed your petition in bankruptcy?" The refusal of the bankrupt to answer such questions would indicate a determination not to answer any questions relating to his business affairs. He had asked to be adjudged a bankrupt, and thus subjected his business dealings for four months prior to his petition to the scrutiny of the court. His debts amounted to several thousand dollars, while his assets were practically nothing. The debts were contracted in the transactions of a mercantile business. He had closed that business by selling the stock of goods. In his sworn statement of debts and estate no account was given of the money received for said stock of goods. It is alleged that this transfer occurred within the four months preceding his petition in bankruptcy. If so, it was certainly a matter for the examination of the court of bankruptcy, and as full and complete testimony as possible with relation thereto should have been elicited. The bankruptcy act contemplates the equitable distribution of the estate of the bankrupt among his creditors, and that the bankrupt will honestly produce and transfer to the trustee all property belonging to him. The testimony which he may be compelled to give includes any matter within his knowledge which is relevant to the transaction under investigation and material to its determination. If, in giving such testimony, he exposes himself to prosecution and penalty, he is within the protection of the statute, and upon any such prosecution is authorized to plead as a bar thereof that under the compulsion of this section he gave the criminating testimony. Under such conditions it was error for the court to refuse to require the bankrupt to give further testimony.

The assigned error of the court below in directing a verdict for the defendant need not be considered at this time, in view of the foregoing conclusion. The instruction to the jury was given on the ground of the insufficiency of the evidence to connect the defendant with any fraud or collusion on the part of the bankrupt. It has been determined that the bankrupt should be compelled to give fuller and more complete testimony with relation to the sale of his stock of goods to the defendant. The effect of this testimony cannot now be determined;

and until such evidence has been given, and the court has acted upon it, no decision is required of this tribunal upon this instruction. The judgment of the court below is reversed, with directions to take further proceedings in accordance with this opinion.