In re WALSH.

(District Court, D. South Dakota, S. D.   July 20, 1900.)

BANKRUPTCY—EXAMINATION OF BANKRUPT—PRIVILEGE FROM GIVING INCRIMI-
NATING TESTIMONY.
    A bankrupt, in his examination before the referee, cannot be required,
    over his claim of privilege, to give testimony which may tend to criminate
    him, unless the question asked is clearly cross-examination upon a matter
    as to which he has volunteered information, either in his petition or sched-
    ules, or in his previous testimony; the provision of Bankr. Act 1898, § 7a,
    subd. 9, that no testimony given by him shall be offered in evidence against
    him in any criminal proceeding, being short of the full immunity from
    prosecution, which alone can meet the requirement of the constitutional
    guaranty that no person shall be compelled in any criminal case to be a
    witness against himself.

In Bankruptcy.

C. H. Winsor, for bankrupt.

H. H. Keith, for certain creditors.

CARLAND, District Judge.   This matter comes before the court
in pursuance of an order to show cause issued by the court upon the
filing of the certificate of the referee in bankruptcy located at Sioux
Falls, wherein the referee certifies that in a proceeding before him
in the matter of the bankruptcy of John W. Walsh, wherein the said
bankrupt was being examined in connection with his bankruptcy,
said bankrupt was shown two exhibits, D and E, which are attached
to the referee's certificate, and which exhibits are statements made
to John V. Farwell Co., of Chicago, Ill., purporting to be signed by
the bankrupt, J. W. Walsh, and dated February 27, 1899.   Upon
the production of said exhibits to the witness, he was asked by at-
torneys for certain creditors:

    "Q. I show you Exhibits D and E, and ask you if this is your signature. A.
I refuse to answer.   Q. Upon what grounds do you refuse to answer?   A.
Upon the grounds that the answer may tend to criminate me.   Q. Who told
you to make that answer?   A. Nobody.   Q. How, then, do you know that
your answer will criminate?   A. I do not.   Q. Then why do you refuse to
answer?   A. Because the answer may tend to criminate me."

Upon the refusal of the witness to answer the question the referee
ordered the witness to answer.   The witness was again asked by
counsel:

    "Q. I show you the signature at the bottom of Exhibits D and E, and ask
you if that is your signature."

The witness again answered:

    "A. I refuse to answer, on the ground that it may tend to criminate me."

Whereupon the referee certified the matter to this court, and the
matter is now before the court as a proceeding to punish the wit-
ness for contempt in not obeying the order of the referee to answer
the questions propounded.

The question asked by the counsel of the witness on his examina-
tion before the referee appears to have been material to the inquiry
then being had.   It would be material upon the question as to

whether the bankrupt was entitled to exemptions, and perhaps upon other matters. It therefore was a question which the bankrupt ought to have answered unless he is protected by the constitutional guaranty found in the constitution of the United States that no person shall be compelled to be a witness against himself. There is no question about this guaranty, or that the witness is entitled to its protection, unless the phraseology of the bankruptcy law, which provides that no testimony elicited from the bankrupt shall be offered in evidence against him in any criminal proceeding, is as broad in its scope and effect, and guaranties as full protection, as the constitution of the United States.

In my opinion, the case of Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110, forecloses any inquiry by this court as to whether or not such an expression in the bankruptcy law is as broad as the protection guarantied by the constitution of the United States. In that case the supreme court of the United States held that the general law of the United States, as found in Rev. St. § 860, which, so far as this case is concerned, is identical with the language of the bankruptcy law, was not as broad and effectual for the purpose of securing the liberty of the citizen as the language of the constitution of the United States, and, it not being a full protection, the witness was not bound to answer the questions set forth in that case. I know of no authority to the contrary, except the late case decided by the court of appeals in the Ninth circuit (Mackel v. Rochester [C. C. A.] 102 Fed. 314, 2 Nat. Bankr. N. 880, 4 Am. Bankr. R. 1); and, of course, when it comes to the propositon as to which court this court must follow, there is no question; it must follow the supreme court of the United States. Why this case of Counselman v. Hitchcock was not mentioned in the case in the court of appeals I do not know. The court seems to have based its decision on the case of Brown v. Walker, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819, which was a case arising under the interstate commerce act, after the congress of the United States had amended it to do away with the difficulty that was found to exist in the case of Counselman v. Hitchcock.

Now, it is also alleged here by counsel that, the bankrupt having filed a voluntary petition in bankruptcy, the question here asked was in the nature of a cross-examination, and that, having volunteered information in regard to the matter, he could not stand upon his constitutional guaranty in refusing to be cross-examined. It does not appear to the court how the question asked could in any way be a cross-examination of any information that would be contained in the schedule which the bankrupt had vo'untarily given. The question asked certainly might tend to criminate the witness. If the statement made to the John V. Farwell Company were false, and the Farwell Company relied upon it in furnishing these goods, then Walsh would be guilty of obtaining property under false pretenses.

Now, while it is very desirable, as the court of appeals in the Ninth circuit says, that the bankrupts should be compelled to answer these questions, so that the estate of the bankrupt should be properly administered and distributed, still the bankruptcy law, and the courts,

and all of us are bound by the superior provisions and paramount authority of the constitution of the United States, and all and everything must give way to its mandates. I can see that in some instances the fact that the bankrupt stands upon his constitutional guaranty would interfere with the proper administration of the bankruptcy law, but that is not a question which the court has the power to remedy. If the congress of the United States desires to draw from the bankrupt testimony that may tend to criminate him, it must by legislation provide, under the ruling in the case of Brown v. Walker, nothing short of immunity from prosecution. Not that it shall never be used in any criminal proceeding against him, but that he cannot be prosecuted by reason of any information gained in this manner.

This being the opinion of the court, it results that the rule to show cause must be discharged. I will say, however, that it is not every question that the bankrupt may refuse to answer. He would not be protected in case a question was clearly cross-examination of what he had volunteered himself, either in his petition and schedules, or any testimony he had already given before the referee. And, in questions where the referee is satisfied clearly that the bankrupt would not criminate himself by answering the same, he would not be entitled to this protection; but, upon the question here certified, I think the bankrupt was entitled to the guarantied privilege. Such will be the order of the court.