## In re PODOLIN et al.

### (District Court, E. D. Pennsylvania.   May 28, 1913.)

### No. 4,177.

1. BANKRUPTCY (§ 28*)—SCHEDULES—CONTENTS—DANGER OF PROSECUTION—EXPOSURE.

Where bankrupts' transactions with R., consisting of an alleged delivery of goods to R. as collateral security for a loan, had been held fraudulent and there was actual danger of prosecution of the bankrupts for an offense arising out of such transaction, they would not be required to make any reference thereto in their schedules.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 27; Dec. Dig. § 28.*]

2. BANKRUPTCY (§ 28*)—SCHEDULES—DUTY TO FILE—INFORMATION—CRIMINAL PROSECUTION.

A bankrupt made a financial statement to creditors in June, 1911, and was adjudicated a bankrupt in June, 1912.  In December, 1911, criminal proceedings were instituted against the bankrupts for conspiracy to defraud creditors by fraudulent use of the mails, consisting of the sending out of a statement made in June, which was claimed to be false and fraudulent.  *Held,* that there was no such connection between the bankrupts' condition in June, 1911, and at the time it became their duty to file their schedules, as would entitle them to refuse to give a list of creditors holding securities, a list of creditors whose claims were unsecured. a list of liabilities on bills and notes discounted which ought to be paid by drawers, makers, acceptors, or indorsers, a list of stock in business and the value thereof, and a list of personal property and debts due bankrupts on open accounts, on the theory that to do so would tend to incriminate them.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 27; Dec. Dig. § 28.*]

In Bankruptcy.  In the matter of Israel Podolin and others, trading as the Franklin Suit & Skirt Company.  The bankrupts having been ruled by the referee to file more complete schedules, the order was brought to the District Court for review of certificate of the Referee. Affirmed.

See, also, 202 Fed. 1014.

The following is the opinion of Richard S. Hunter, Referee:

A petition in involuntary bankruptcy was filed against Israel Podolin, Benjamin Dein, and Louis Brod, individually and trading as the Franklin Suit & Skirt Company on October 17, 1911;  and on November 3, 1911, the receiver in bankruptcy filed a petition for an order on Samuel Rudsky to deliver over unto him certain merchandise claimed to be the property of the alleged bankrupts.  The present referee was appointed special referee under this issue, and found that the bankrupts, in conjunction with Rudsky and others, had fraudulently removed these goods from their place of business under an alleged delivery of the same as collateral security for a loan, and that the property belonged to the receiver in bankruptcy.  His findings were affirmed by the District Court of the United States, and there has been no appeal therefrom.

In this proceeding the bankrupts maintained, and their books showed, that they had borrowed certain moneys from Rudsky, and given and surrendered this merchandise as security therefor.  The referee found that this conten-

tion was false, and that the transaction was a fraud upon creditors, and the court sustained his view.

On December 19, 1911, a warrant was issued in the District Court on information filed by the Postal Department against the bankrupts, alleging a conspiracy to defraud creditors by fraudulent use of the mails. An indictment was found against the three bankrupts, at March sessions, 1912, No. 28, charging them with having sent through the mails a statement of their financial worth, which was false and fraudulent, and got up for the purpose of cheating and defrauding creditors. This indictment is pending and undisposed of.

An adjudication in bankruptcy was made on the 28th day of June, 1912, and the bankrupts declined to file schedules in the case, on the ground that they would tend to incriminate them. The referee upon argument decided that the bankrupts should file their schedules in bankruptcy; and that, whenever particular information required under those schedules was such as might incriminate them, they should refuse to furnish it upon the specific ground that in doing so it might incriminate them. The referee's decision was sustained by the District Court.

The bankrupts then filed schedules, which answered certain of the questions which they were compellable to answer in bankruptcy, but declined to answer questions or give lists under the following heads:

List of creditors holding securities.

List of creditors whose claims are unsecured.

List of liabilities on notes or bills discounted, which ought to be paid by drawers, makers, acceptors, or indorsers.

List of stock in trade in business, and the value thereof.

List of goods or personal property of any other description with the place where it is situated.

List of debts due bankrupts on open accounts.

A petition was then filed by a creditor of the bankrupt, asking for an order that the bankrupts should complete their schedules in bankruptcy, so as to contain the matter omitted. The bankrupts filed an answer, averring that they had replied to all the questions except such as would tend to incriminate them.

The question presented before the referee is believed to be of first impression. Counsel has not cited, nor can the referee find, any case in which a bankrupt has declined to file schedules, on the ground that they will incriminate him; or, again, has declined to give the most important lists required by the act for the same reason. In Commonwealth v. Ensign, 40 Pa. Super. Ct. 157, 22 Am. Bankr. Rep. 797, schedules filed by the defendant in involuntary bankruptcy were decided by the quarter sessions court of Erie county to be admissible against him. On appeal to the Superior Court it was decided: First. That section 860 of the Revised Statutes of the United States' (U. S. Comp. St. 1901, p. 661) providing "no pleading of a party, or any discovery or evidence obtained from a party or witness by means of a judicial proceeding in this or any foreign country, shall be given in evidence, or in any manner used against him or his property or estate, * * * in any criminal proceeding, or for the enforcement of any penalty or forfeiture," applies only to courts of the United States. Second. That the proviso in section 7 of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 548 [U. S. Comp. St. 1901, p. 3424]) that "no testimony given by the bankrupt shall be offered in evidence against him in any criminal proceeding" applies only to the evidence given at the meetings of creditors under clause 9 of this section, and not to the schedule to be filed by him under clause 8 of the section. Third. That the schedules might be used under the indictment to show the receipt of bank deposits when the bank was insolvent. The court went on to say:

"Counsel contend that the use of the schedules and the books in this trial was in violation of the defendant's rights under the provisions of the federal Constitution that no person 'shall be compelled in any criminal case to be a witness against himself,' and the provision of the state Constitution that in criminal prosecutions the accused 'cannot be compelled to give evidence

against himself.' It is to be observed that the commonwealth did not obtain these documents by any compulsion exerted by it upon the defendant. But it is said the schedules were filed and the books were delivered to the trustee by compulsion of the provisions of the bankruptcy law and of the general orders in bankruptcy, and therefore they could not be used in any criminal prosecution of the defendants either in the state courts or in the United States courts. It is to be observed, in this connection: (1) That the Bankruptcy Act attaches no penalty to the bankrupt's failure to file the schedule; (2) that the schedules involved in the present case were not filed under compulsion of any special decree or order of court or of any attachment or proceeding for attachment; (3) that the defendants did not object to filing them upon the ground that thereby they would furnish evidence that might incriminate them; (4) that they did not file them under the inducement of any provision of any act of Congress or of the state Legislature prohibiting them from being used against them in any criminal prosecution in the state courts; (5) that it does not appear that at the time they filed them they were under arrest or had been charged with a criminal offense or were under any sort of duress. Generally speaking, and in the absence of statutory regulation of the subject, testimony and written statements voluntarily given or made by a party or witness in a judicial proceeding are as admissions and confessions competent against him on the trial of any issue in a criminal case to which they are pertinent, and, according to the great weight of authority, such statements and testimony are considered voluntary when given or made under the circumstances above enumerated. * * * It follows that the court did not commit error in admitting the papers and testimony referred to in the first two assignments of error."

This case was taken by writ of error to the Supreme Court of the United States, which on February 24, 1913, affirmed the judgment of the Superior Court of Pennsylvania: Judge Pitney saying:

"It was reasonable for Congress to make a distinction between the schedule, which may presumably be prepared at leisure and scrutinized by the bankrupt with care before he verifies it, and the testimony that he is to give when he submits to an examination at a meeting of creditors or at other times pursuant to the order of the court—a proceeding more or less unfriendly and inquisitorial as well as summary, and in which it may be presumed that even an honest bankrupt might, through confusion or want of caution, be betrayed into making admissions that he would not deliberately make." 227 U. S. 592, 33 Sup. Ct. pages 321, 323, 57 L. Ed. ——.

It will be observed that while the Superior Court does not directly decide that if the defendants had been compelled against their protest, by order of the United States courts, to file their schedules, such schedules could not be used against them in bankruptcy; yet the reasoning of the court goes directly to this point, that it may fairly be inferred that in its judgment schedules compulsorily obtained from the bankrupts under circumstances similar to the present cannot be used against them.

The bankrupts, however, further object to the furnishing of these lists upon the ground that information may be obtained from them which will lead to their incrimination. Their reasoning is that having already been declared perjurers in the Rudsky proceeding, these lists will either show that they then committed perjury, or were committing perjury in the filing of their schedules.

The indictment found against the bankrupts is based upon an alleged statement of theirs, dated September 6, 1911, containing a statement of their accounts as of June 10th, of the same year. It embraces a list of book accounts and merchandise on hand on the asset side, and open accounts and loans on the liability side, and they allege that if they are compelled to set forth a list of their creditors as of the date of the filing of the petition in bankruptcy, even though it were several months after the date of the statement, it would furnish the names of the parties with whom they dealt, and from it could be obtained a statement of the accounts of the bankrupts with them as of June 10, 1911, the sum total of which might differ entirely from

the statement of liabilities as set forth in the bankrupts' statement, upon which they were indicted.

It has been repeatedly held that a bankrupt pleading his constitutional privilege must give such information to the court as will enable it to judge whether he is within such privilege, and the question before the referee is therefore whether, under the circumstances of this case, the filing of the omitted lists would furnish information to sustain the criminal charge. It is not, in the referee's opinion, material that these lists might in some unlikely contingency give such information. They must be such as would evidently do so; and the bankrupts' counsel has endeavored to show that they will necessarily do so. Each of these lists is considered seriatim in the able briefs filed by counsel for the trustee and for the bankrupts.

As to the list of creditors holding securities:

The bankrupts aver that in the Rudsky proceedings they maintained that the goods which were found in Rudsky's warehouse had originally been placed with him as collateral security for a loan; that, the court having found to the contrary, the bankrupts cannot furnish these lists without condemning themselves either in their previous testimony or at this time. It does not appear to the referee that this contention is well founded. The bankrupts have been already exhibited as perjurers in the Rudsky matter, and will furnish no additional evidence against themselves either by following the findings of the court in the Rudsky matter, or by repeating in their schedule the allegations which were then characterized as false.

The bankrupts delivered to the receiver in bankruptcy at the time of his appointment all of the books and papers used by them in the conduct of their business, and any list of creditors holding security filed by them must be the list which existed in November, 1911, when the petition in bankruptcy was filed. The statement, however, sent to the creditor, on which the warrant was issued, by the United States government, was in the previous June. The court is therefore asked to absolve the bankrupts from their statutory duty on the ground that information may possibly be obtained from the list of creditors existing in November, which will affect the credibility of the statement of liability made in the previous June.

The other lists which form the subject of the petition may be considered together. They refer to unsecured creditors, to liabilities on notes or bills, to stock in trade in business, to personal property of any other description, and to debts due the bankrupts, all as of November, 1911.

The bankrupts aver that if they are compelled to set forth a list of the creditors as of the date of the petition in bankruptcy, even though it be several months after the date of the statement, to the creditors for which they are indicted, it will furnish the names of the parties with whom they dealt, and from it can be obtained a statement of the accounts of the bankrupts with these parties as of June 10, 1911, the sum total of which may differ materially from their statement of liabilities of that date. They aver in the same way that a list of their liabilities on notes and bills, a list of their stock in trade, a list of their personal property, and a list of the debts due to them, will furnish information as of November, 1911, which may be so followed as to furnish incriminating evidence against them as to their statement made in June, 1911.

The question whether the bankrupts can refuse to deliver possession of the books and papers of the estate to the trustee in bankruptcy upon the ground that they contain incriminating evidence has been finally settled by the Supreme Court in the case of Matter of Harris, 26 Am. Bankr. Rep. 302, 221 U. S. 274, 31 Sup. Ct. 557, 55 L. Ed. 732, upon the ground that the books belong to the trustee in bankruptcy, and cannot be withheld from him, and that if they incriminate the bankrupt "that is one of the misfortunes of bankruptcy if it follows crime." Prior to this decision it had been held in various cases (In re Hess, 14 Am. Bankr. Rep. 826, 136 Fed. 988; In re Hark Bros., 14 Am. Bankr. Rep. 624, 136 Fed. 986; In re Rosenblatt, 16 Am. Bankr. Rep. 308, 143 Fed. 663; In re Bendheim, 24 Am. Bankr. Rep. 254, 180 Fed. 918), by District Courts of the United States, that the court must be placed in position to judge whether there is reasonable ground to apprehend danger to

a witness compelled to answer. The referee has sufficiently discussed the possibility of a further incrimination of the bankrupts by the filing of schedules under the present circumstances, and has concluded that it does not exist.

It is not necessary, however, for the trustee to establish beyond any possible doubt that the list furnished by the bankrupts will not incriminate them; it is for the bankrupts to show a reasonable likelihood that they will so be incriminated. This will appear manifest when it is considered that they are seeking to excuse themselves from a statutory duty of the highest importance. Their failure to discharge this duty will embarrass the trustee at every step, and may render it impossible for him to conduct the proceedings in bankruptcy.

The referee orders the bankrupts within 30 days to complete their schedules in bankruptcy by the addition of a list of creditors holding securities; a list of creditors whose claims are unsecured; a list of liabilities on notes or bills discounted which ought to be paid by makers, drawers, and acceptors; a list of stock in business and the value thereof; a list of personal property of whatever description and the place where situate; and a list of debts due the bankrupts on open accounts.

J. Howard Reber, of Philadelphia, Pa., for petitioning creditors.
Clinton O. Mayer, of Philadelphia, Pa., for bankrupts.

J. B. McPHERSON, Circuit Judge. [1] The referee's order of May 12, 1913, will be so modified, ex majori cautela, as to provide expressly that the bankrupts may omit from their schedules any reference to the transaction with Rudsky. They are still exposed to the danger of prosecution in connection with that transaction, and they should not be compelled to run the not remote risk of having their statements used against them in such a prosecution. The connection between such statements and the evidence required to sustain the prosecution is direct and immediate.

[2] But their objection to filling out the other schedules cannot be sustained. These (A3, A4, B2C, and B3a) require them to set forth certain facts about their financial condition in October, and I have not been convinced that these facts have so close a connection with the written representations about their condition that were mailed in the preceding June as would tend to convict them of a postal crime in making such representations. In my opinion the connection, if it exists at all, is remote and contingent, and need not be taken into account.

With the foregoing modification, and with a slight change in date, so that the bankrupts are now directed to file their schedules on or before June 16th, instead of the date fixed by the referee, his order is affirmed.