## In re NALETSKY.

(District Court, D. Connecticut. September 21, 1921.)

No. 4918.

1. **Bankruptcy ☞28—Bankrupt, claiming full schedules would incriminate, may file partial schedules and submit eliminations to the court.**

   Where the bankrupt claims that the filing of full schedules would tend to incriminate him, but he offered to file such schedules as could not be used against him in pending criminal proceedings, he will be permitted to file his schedules in accordance with the offer, and to submit to the court the matter eliminated, so that the court may say whether the part eliminated, if filed, would tend to incriminate the bankrupt.

2. **Bankruptcy ☞136(1)—Bankrupt need turn over only assets which do not incriminate, submitting to court question as to the rest.**

   A bankrupt, who relies on his constitutional privilege not to testify against himself as ground for refusing to turn over all his assets to his trustee, should turn over to the trustee such assets as he does not claim would incriminate, and submit to the court the question whether the delivery of the other assets would in fact incriminate.

3. **Bankruptcy ☞242(2)—Bankruptcy Act, providing against using testimony in criminal prosecution, does not give full immunity.**

   The provisions of Bankruptcy Act, § 7 (9), being Comp. St. § 9591, that no testimony given by the bankrupt shall be offered in evidence against him in any criminal proceeding, but not giving him immunity from prosecution with reference to the subject-matter concerning which he testified, does not give him the full protection against being compelled to testify against himself to which he is entitled, under Const. Amend. 5.

4. **Witnesses ☞308—If answer may incriminate, witness alone determines whether it will.**

   If the question asked a witness who claims his privilege is of such a description that the answer may or may not incriminate, the witness can refuse to answer, since it must rest with him to determine whether in fact it would or would not.

5. **Bankruptcy ☞242(2)—Court can collaterally determine whether claim of privilege by bankrupt is in bad faith.**

   Since it would defeat the administration of estates under the Bankruptcy Act (Comp. St. §§ 9585-9656) to permit a bankrupt to refuse to answer questions whenever he claims the answer would tend to incriminate him, it is within the power of the court to determine in a collateral inquiry, where objection is raised concerning the good faith of the witness in claiming his privilege, whether the fear that the answer will tend to criminate him is well founded, and, if it is not, to compel the witness to answer.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Bankruptcy ⇐242(2)—Indictment of bankrupt for concealing assets shows fear of incrimination was real.**

Where a bankrupt had been indicted for concealing assets from his trustees two days prior to the hearing, the claim of the bankrupt that his answers to questions at the hearing concerning his property would tend to incriminate him is not frivolous, imaginary, or fanciful.

**7. Bankruptcy ⇐242(2)—Referee should caution bankrupt as to privilege, and liability to perjury for false claim.**

The referee, in examining a bankrupt who has been indicted for concealing his assets, should caution the bankrupt as to his privilege, and also advise him that, if his statement that his answers will tend to incriminate him is false, he thereby renders himself liable to a prosecution for perjury.

In Bankruptcy. In the matter of Morris Naletsky, bankrupt. Proceedings certified by the referee to obtain a ruling as to the obligation of the bankrupt to file schedules, to deliver assets, and to answer questions propounded. Matter referred to referee, with instructions.

Solomon Badesch, of Bridgeport, Conn., for petitioning creditors.
Brooks & Brooks, of New Haven, Conn., for bankrupt.

THOMAS, District Judge. Upon the examination before the referee the bankrupt refused to file his schedules, or to answer questions relative to his assets and liabilities, or the whereabouts of any of his property, or to give any information which would enable the trustee to take possession of his property, or to proceed with the administration of the estate. The referee accordingly certified the proceedings to the court for the purpose of obtaining a ruling as to the obligation of the bankrupt—(1) to file schedules pursuant to the provisions of the Bankruptcy Act; (2) to comply with the orders of the referee relative to the delivery of his assets to the trustee; and (3) to answer the questions propounded concerning his assets and liabilities.

It further appears from the certificate, that at the request of counsel for petitioning creditors, the facts are certified. To this certificate is attached a transcript of the evidence taken before the referee. It is sufficient to say that an examination of that record shows that, if the bankrupt was within his constitutional rights, his refusal to answer the questions or to comply with the orders of the referee was no contempt, as the questions asked were material to the issue, the answers to most of which, it is quite clear, might tend to criminate the witness.

From the record it appears that on November 26, 1919, an involuntary petition in bankruptcy was filed by creditors against the above-named bankrupt, and he was duly adjudicated on February 9, 1920. On March 9, 1920, an indictment was found by the grand jury against the bankrupt and others, charging them with a violation of section 37 of the Penal Code (Comp. St. § 10201). Two days later, pursuant to subpœna, the bankrupt appeared before the referee for examination, and it was under these circumstances that the hearing proceeded and during which the bankrupt, on advice of counsel, declined to answer all questions relating to his assets and liabilities or to comply with any of the orders of the Referee.

⇐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] 1. *As to Schedules.* The bankrupt was ordered to file schedules. Acting on the advice of counsel, he refused to do so and invoked his constitutional privilege in support of the refusal. But in his brief counsel say:

"It is not, nor has it been the intent of the bankrupt to refuse to file bankruptcy schedules. His attorney has offered to file such schedules, eliminating therefrom only such matter as the bankrupt honestly believed might be used against him in a criminal proceeding."

This offer makes further discussion as to the schedules unnecessary. Let the bankrupt file his schedules with the referee in accordance with the offer, and submit to the court the matter eliminated, that the court may say whether the part eliminated, if filed, would tend to criminate the bankrupt.

[2] 2. *As to Assets.* It necessarily follows that he should turn over his assets to the trustee, unless such act will tend to criminate him, and if he relies upon his constitutional privilege in this connection, the matter may be submitted to the court to decide whether such act will in fact incriminate him. In re Hess (D. C.) 134 Fed. 113; Podolin v. Lesher Warner Dry Goods Co., 210 Fed. 97, 126 C. C. A. 611. This ruling is intended to follow In re Podolin et al. (D. C.) 205 Fed. 563, where it was held that, where there was actual danger of prosecution of the bankrupts for an offense arising out of a certain transaction, they would not be compelled to make any reference thereto in their schedules. On page 567 of 205 Fed. Judge McPherson said:

"The referee's order * * * will be so modified, ex majori cautela. as to provide expressly that the bankrupts may omit from their schedules any reference to the transaction with Rudsky. They are still exposed to the danger of prosecution in connection with that transaction, and they should not be compelled to run the not remote risk of having their statements used against them in such a prosecution. The connection between such statements and the evidence required to sustain the prosecution is direct and immediate."

This ruling was affirmed by the Circuit Court of Appeals for the Third Circuit in 210 Fed. 97, and at page 103, 126 C. C. A. 611, 617, Judge Gray said:

"Where the bankrupt claims his constitutional privilege under the amendment, and refuses to give the information required by the Bankrupt Act, on the ground that it may incriminate him it must at least appear to the court from the character of the information sought or the question propounded, that his claim is justified, or the bankrupt must produce facts on which he bases such claim, in order that the court may judge of their sufficiency to support it."

And on page 104 of 210 Fed. (126 C. C. A. 618), in stating the court's conclusion generally, the learned judge said:

"Liberal as to the scope given to the Fifth Amendment by the court is and ought to be, it was never intended that a bankrupt, dishonest or otherwise, should be clothed with the power to decide for himself when and under what circumstances he was authorized by the amendment to interrupt the bankruptcy procedure, by refusing to conform to the requirements of the law. In the present case, there is clearly no direct and apparent self incrimination that necessarily attaches to the information that is required to be given in the schedule, and in the absence of the facts and details of what that information would be, there is no basis upon which the court could sustain the asserted right of the bankrupts to decline to comply with the requirements of

the law. There is merely a suggestion that, though not directly incriminating, it might perhaps to their disadvantage give clues for investigation in the prosecution of the indictment against them. As was said by the Supreme Court in the case of In re Harris, 221 U. S. 274, 31 Sup. Ct. 557, 55 L. Ed. 732, in deciding that the bankrupt's books belonged to the trustee in bankruptcy and cannot be withheld from him on the ground that they incriminate the bankrupt, 'that is one of the misfortunes of bankruptcy if it follows crime.' "

[3] 3. *As to Refusal to Answer Questions.* The claim is made by the bankrupt that he was under indictment and charged with conspiracy to conceal his assets, and that the answers which he would give might be used in the prosecution against him, which was in fact pending, and that he might also be subjected to additional criminal charges if compelled to testify before the referee. So that the only question left is whether the bankrupt could invoke the aid of his constitutional privilege and refuse to answer the questions propounded, and further whether the bankrupt or the referee shall be the judge of whether the answers will tend to criminate him.

The question presented is not a new one, therefore it is not necessary to discuss at any length, the sufficiency of that provision of the Bankruptcy Act—section 7 (9), being Comp. St. § 9591—which provides, so far as is here pertinent, that:

"No testimony given by [the bankrupt] shall be offered in evidence against him in any criminal proceeding."

It is well settled that, even with the above provision of the Bankruptcy Act, the bankrupt is nevertheless entitled to rely upon the constitutional privilege accorded him under the Fifth Amendment to the federal Constitution which provides, so far as it is here necessary to consider, as follows:

"No person  *  *  *  shall be compelled in any criminal case to be a witness against himself."

The authority in support of this ruling is found in the decision of the Supreme Court of the United States in Counselman v. Hitchcock, 142 U. S. 547, 560, 12 Sup. Ct. 195, 35 L. Ed. 1110.

The provision of section 7, supra, is similar to section 860 of the Revised Statutes, which was under consideration by the Supreme Court in the Counselman Case, and which provides that:

"No pleading of a party, nor any discovery or evidence obtained from a party or witness by means of a judicial proceeding in this or any foreign country, shall be given in evidence, or in any manner used against him or his property or estate, in any court of the United States, in any criminal proceeding, or for the enforcement of any penalty or forfeiture: Provided, that this section shall not exempt any party or witness from prosecution and punishment for perjury committed in discovering or testifying as aforesaid."

Mr. Justice Blatchford, writing the opinion in the Counselman Case, said (142 U. S. on page 562, 12 Sup. Ct. 198, 35 L. Ed. 1110):

"It is impossible that the meaning of the constitutional provision can only be, that a person shall not be compelled to be a witness against himself in a criminal prosecution against himself. It would doubtless cover such cases; but it is not limited to them. The object was to insure that a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself had committed a

crime. The privilege is limited to criminal matters, but it is as broad as the mischief against which it seeks to guard."

On account of this decision, Congress in 1893 amended the Interstate Commerce Act (Comp. St. § 8577), so as to make it provide that the witness shall have absolute immunity from prosecution regarding the subject-matter as to which he testifies. It was under this amendment that the Supreme Court decided Brown v. Walker, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819. It is to be noted that the statute passed in 1893 secures to the witness absolute immunity from prosecution, as distinguished from section 860, which merely provided that the testimony shall not be "used against him or his property or his estate."

And in this connection it is interesting to note that in Brown v. Walker, Mr. Justice Shiras, Mr. Justice Gray, Mr. Justice White, and Mr. Justice Field dissented from the majority opinion, holding that even Congress could not grant a pardon, and that the influence of the constitutional privilege relied upon under the Fifth Amendment, should not be weakened in any respect by the statute which attempted to exercise a prerogative solely possessed by the President. Thus it will be seen how guarded has been the Supreme Court to protect the citizen when invoking the aid of the Fifth Amendment.

It is also instructive to consider what Mr. Justice Bradley said, speaking for the Supreme Court in Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, in connection with the rights of a person to invoke the protection of the Fourth and Fifth Amendments. On page 635 of 116 U. S. (6 Sup. Ct. 535, 29 L. Ed. 746) he said:

"Though the proceeding in question is divested of many of the aggravating incidents of actual search and seizure, yet, as before said, it contains their substance and essence, and effects their substantial purpose. It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be 'obsta principiis.'"

Thus it will be seen that the Supreme Court has always carefully guarded against any "stealthy encroachment" on the constitutional rights of the citizen, has always given such rights a liberal construction, has said that such rights are substantial, and has warned the courts in passing on the vital principles affecting the rights and liberties of the people in a way forcibly epitomized by Mr. Justice Bradley "obsta principiis."

It necessarily follows, if we are to obey that injunction, that the exigencies of the immediate case are of far less importance than the enforcement of those sacred rights guaranteed by the Constitution, and which were promulgated to protect the innocent. A careful examination of the cases decided by many federal judges shows that it has been the policy of the courts to enforce those rights guaranteed

by the Constitution, and it will be sufficient to refer to a few of them. Judge Brown of the Southern District of New York, in In re Feldstein (D. C.) 103 Fed. 269, said on page 271:

"Section 7a (9) of the present Bankruptcy Act provides as respects the bankrupt himself, that 'no testimony given by him shall be offered in evidence against him in any criminal proceeding.' This provision, even if applicable in favor of a witness (which it is not in terms), seems to be no stronger or more effective as a protection that section 860 of the Revised Statutes, which in Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110, was on full discussion held insufficient."

Judge Carland, in In re Walsh (D. C.) 104 Fed. 518, held that a bankrupt in his examination before the Referee, cannot be required, over his claim of privilege, to give testimony which may tend to criminate him, unless the question asked is clearly cross-examination upon a matter as to which he has volunteered information, either in his petition or schedules, or in his previous testimony, and that the provisions of section 7 (9), fell short of the full immunity from prosecution, which alone can meet the requirement of the constitutional guaranty that no person shall be compelled in any criminal case to be a witness against himself. On page 519 of 104 Fed. Judge Carland said:

"In my opinion, the case of Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110, forecloses any inquiry by this court as to whether or not such an expression in the bankruptcy law is as broad as the protection guaranteed by the Constitution of the United States. In that case the Supreme Court of the United States held that the general law of the United States, as found in Rev. St. § 860, which, so far as this case is concerned, is identical with the language of the bankruptcy law, was not as broad and effectual for the purpose of securing the liberty of the citizen as the language of the Constitution of the United States, and, it not being a full protection, the witness was not bound to answer the questions set forth in that case."

Speaking of the effect of a strict enforcement of the rule, the learned judge further said, on page 519 of 104 Fed., in reference to the ruling made by the Circuit Court of Appeals for the Ninth Circuit, which ruling has never been followed for reasons explained by Judge Carland:

"Now, while it is very desirable, as the Court of Appeals in the Ninth Circuit says, that the bankrupts should be compelled to answer these questions, so that the estate of the bankrupt should be properly administered and distributed, still the Bankruptcy Law, and the courts, and all of us are bound by the superior provisions and paramount authority of the Constitution of the United States, and all and everything must give way to its mandates. I can see that in some instances the fact that the bankrupt stands upon his constitutional guaranty would interfere with the proper administration of the Bankruptcy Law, but that is not a question which the court has the power to remedy. If the Congress of the United States desires to draw from the bankrupt testimony that may tend to criminate him, it must by legislation provide, under the ruling in the case of Brown v. Walker, nothing short of immunity from prosecution. Not that it shall never be used in any criminal proceeding against him, but that he cannot be prosecuted by reason of any information gained in this manner."

[4] In the Matter of Levin (D. C.) 131 Fed. 388, at p. 389, Judge Holt stated the rule as follows:

"As I understand the rule, if the question is of such a description that the answer may or may not criminate the witness, he can refuse to answer (Judge Marshall's opinion on Burr's Trial, 25 Fed. Cas. 39); but if the court is convinced that the answer to the question cannot by any possibility criminate him, and especially if the witness does not swear that he believes that it would. it is the duty of the court to compel him to answer."

The first part of the rule there stated is in harmony, not only with the decisions, but as well with the words, of Chief Justice Marshall, who in June, 1807, in the Circuit Court for the District of Virginia, in Burr's Trial, 1 Burr's Trial, 244, Fed. Cas. No. 14,692e, said:

"If the question be of such a description that an answer to it may or may not criminate the witness, * * * it must rest with himself, who alone can tell what it would be, to answer the question or not. If, in such a case, he say upon his oath that his answer would criminate himself, the court can demand no other testimony of the fact."

And after further discussion the learned Chief Justice concludes as follows:

"It would seem, then, that the court ought never to compel a witness to give an answer which discloses a fact that would form a necessary and essential part of a crime which is punishable by the laws."

[5] Thus it will be seen how securely is this right given and guaranteed the citizen by the courts in their construction of the law. But the remaining question, and the one necessarily arising, is whether the witness is at all times to be the judge of whether an answer to a question will criminate him. If the answer be "Yes," then it would follow that no force or effect could be given to the administration of the Bankruptcy Act wherever any bankrupt asserted his constitutional privilege, and in order to prevent this the courts have ruled, in their desire to allow the administration of the Bankruptcy Act to proceed in an orderly way, and in their endeavor to fully protect the witness and enforce the constitutional privilege, that if the witness, under the peculiar circumstances of each case, honestly believes, and on oath honestly asserts, that his answer will criminate or tend to criminate him, he need not answer; but, if objection be raised concerning the good faith of the witness, the court will determine, in a collateral inquiry, whether his judgment be sound or not, and whether his fear that his answer will tend to criminate him is well founded, and, if it is, that he need not answer, but, if it is not, that he is then compelled to answer. Perhaps Judge Holland, in In re Hess (D. C.) 134 Fed. 109, has stated the rule as well as it can be stated. On page 113 he said:

"When a witness is before the court in a proceeding, and a question is propounded, it must appear to the court, from the circumstances of the case and the nature of the evidence which the witness is called to give, that there is reasonable ground to apprehend danger to the witness from being compelled to answer. to entitle him to the privilege of silence; and, when the fact of the witness being in danger be once made apparent to the court. great latitude should be allowed to him in judging for himself of the effect of any particular question. Brown v. Walker. 161 U. S. 599, 16 Sup. Ct. 648, 40 L. Ed. 819. 'The object of the law is to afford to a party called upon to give evidence in a proceeding. inter alios, protection against being brought by means of his own evidence within the penalties of the law. But it would be to convert a salutary protection into a means of abuse, if it were to be held that a mere

imaginary possibility of danger, however remote and improbable, was sufficient to justify the withholding of evidence essential to the ends of justice.' Brown v. Walker, supra. This being the practice when witnesses are called to testify and claim their privilege, it is equally important, under the Bankrupt Law, that the court should pass upon the probability of danger to the bankrupt when he pleads his constitutional privilege, upon a demand made by a trustee in bankruptcy for him to deliver his books and papers as required by that act. Where, under these circumstances, a bankrupt pleads this privilege, he should be required to bring the books and papers which he alleges contain the incriminating evidence before either the court or referee in bankruptcy; and, when it is made to appear that his plea is well founded, the court can make such order in the case as will fully protect him from discovery of such evidence, and at the same time, if possible, enable the trustee to obtain such information from the books as is always necessary and indispensable in the settlement of bankrupt estates."

The Supreme Court in Brown v. Walker, supra, 161 U. S. at page 599, 16 Sup. Ct. 648, 40 L. Ed. 819, quoted with approval the words of Lord Chief Justice Cockburn in Queen v. Boyes, 1 B. & S. 311, 321. He said:

" 'To entitle a party called as a witness to the privilege of silence, the court must see, from the circumstances of the case and the nature of the evidence which the witness is called to give, that there is reasonable ground to apprehend danger to the witness from his being compelled to answer,' although 'if the fact of the witness being in danger be once made to appear, great latitude should be allowed to him in judging for himself of the effect of any particular question.' 'Further than this,' said the Chief Justice, 'we are of opinion that the danger to be apprehended must be real and appreciable, with reference to the ordinary operation of law in the ordinary course of things—not a danger of an imaginary and unsubstantial character, having reference to some extraordinary and barely possible contingency, so improbable that no reasonable man would suffer it to influence his conduct. We think that a merely remote and naked possibility, out of the ordinary course of the law and such as no reasonable man would be affected by, should not be suffered to obstruct the administration of justice.' "

In a very well considered case the Court of Appeals of New York, in People ex rel. Taylor v. Forbes, 143 N. Y. 219, 38 N. E. 303, discusses these questions in the light of the decision of the Supreme Court in Counselman v. Hitchcock, supra. and that learned court concludes (143 N. Y. on page 231, 38 N. E. 306), respecting the question of how far the witness shall be protected against an invasion of his rights under the Constitution of New York, which is the same as the Constitution of the United States upon the right to assert the constitutional privilege, as follows:

"The weight of authority seems to be in favor of the rule that the witness may be compelled to answer when he contumaciously refuses, or when it is perfectly clear and plain that he is mistaken, and that the answer cannot possibly injure him, or tend in any degree to subject him to the peril of prosecution. But the courts have recognized the impossibility in most cases of anticipating the effect of the answer. Where it is not so perfectly evident and manifest that the answer called for cannot incriminate, as to preclude all reasonable doubt or fair argument, the privilege must be recognized and protected."

[6] As in that case, so here, considering the relation of the witness to the subject of the inquiry and the character and scope of the questions propounded, and the fact that an indictment had been returned by the grand jury only two days prior to the hearing, the conclusion

that the objections were frivolous, imaginary, or fanciful finds no basis in fact or law. In re Nachman (D. C.) 114 Fed. 995, followed Counselman v. Hitchcock and Brown v. Walker, supra, and Judge Brawley, after discussing those cases, stated his conclusion (114 Fed. on page 996) as follows:

"It may be well contended that the object designed to be accomplished by section 7 of the Bankruptcy Act, which requires the bankrupt to submit to an examination concerning the conduct of his business, will be defeated, if the witness is thus permitted to refuse to testify concerning his dealings with his creditors and others, and such undoubtedly is the unfortunate result; but it is for the Congress to provide, if it can, against such contingencies. * * * The courts cannot deprive a citizen of the constitutional right invoked by him for his protection upon any consideration of inconvenience or for the purpose of administering what it may regard as a salutary and useful law."

Upon the question of the duty of the referee under the circumstances presented, Judge Brawley says, on page 997:

"Under the provisions of section 7, the witness is compelled to give testimony concerning his business, and he cannot interpose objections which will shut out all light whatever from his creditors. The constitutional immunity can only be invoked to protect him from answering a question the answer to which might subject him to prosecution. In the further conduct of the examination the referee is directed, whenever a question is propounded, to notify the witness that he is not required to answer it if the answer would tend to criminate himself. It is only questions of that nature that he may refuse to answer. He is not to be permitted to interpose his constitutional immunity as a shield to every inquiry concerning his business, nor is his counsel to be permitted to delay or obstruct inquiry by making objections for him. If he claims that the answer to any question propounded would tend to criminate him, he cannot be compelled to answer. This claim, to be effective, should be made by the witness himself, but the referee should notify him that a statement that such answer would tend to criminate him would, if false, subject him to a prosecution for perjury, as would any other false oath."

Apropos of the general discussion, see, also, In re Feldstein (D. C.) 103 Fed. 269; In re Franklin Syndicate (D. C.) 114 Fed. 205; In re Henschel (D. C.) 7 Am. Bankr. Rep. 207; In re Smith (D. C.) 112 Fed. 509; In re Kanter et al. (D. C.) 117 Fed. 356. In the last case it appeared that the bankrupts were under indictment in a state court, charged with state crimes committed shortly before the filing of the petition in bankruptcy and related to matters involved in the bankruptcy proceedings. It was alleged by the bankrupts that the schedules, books, etc., would be competent and relevant evidence against them in the criminal actions, and if they were compelled to make and file the schedules, and produce the books, they would be deprived of their constitutional privilege. The matter came before the court on the motion of petitioning creditors to punish the bankrupts for contempt in failing to obey the usual order of the referee requiring the bankrupts to file schedules, and to compel them to turn over to the receiver all books of account, records, papers, etc. In denying the motion, Judge Adams, of the Southern District of New York, said on page 357:

"The answer of the petitioning creditors to the contention [of the bankrupts that if they complied with the order of the referee] is, while recognizing the rule that parties cannot be compelled to furnish such evidence when it reasonably appears that it will have a tendency to expose them to penal

liability, that it is for the court to determine whether the evidence will incriminate them and that they can not be permitted to judge for themselves in a case of this kind, thus depriving their creditors of an opportunity to ascertain the condition of the estate. And it is urged that schedules, books, etc., would not furnish incriminating evidence. In a case where it clearly appears to the court that a party from whom evidence is sought contumaciously or mistakenly refuses to furnish that which can not possibly injure him, he will not be permitted to shield himself behind the privilege, but generally the party best knows what he cannot furnish without accusing himself, and where it is not, perfectly evident and manifest that the evidence called for will not be incriminating, the privilege must be allowed. People v. Forbes, 143 N. Y. 219, 38 N. E. 303; Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110. Here the inculpated parties explicitly depose that the books, etc., sought to be obtained would furnish evidence against them and so far from being able to say that it clearly appears such would not be the case, I should be inclined to believe that it would, from the nature of the evidence which the books, etc., would in all probability furnish."

[7] The matter is referred back to the referee, with instructions to follow the rulings set forth in this memorandum. The bankrupt will be ordered: (1) To file his schedules with the referee in accordance with the terms of counsel's offer, and submit to the court the matter eliminated, that the court may say whether the part eliminated, if filed, would tend to criminate the bankrupt; (2) to turn over his assets to the trustee in so far as the same may be done without incrimination, and submit to the court the matters eliminated, to decide whether such act will in fact incriminate him; and (3) the bankrupt will answer such questions as can be answered without incrimination—and, if under these three orders the results are unsatisfactory, the matter may be brought again before the court for the purpose of having the court determine whether the claim of the bankrupt as to privilege is made in good faith or is contumacious. The referee should caution the bankrupt, not only as to his rights, but advise him that, if his statement that the answers to the questions propounded will incriminate or tend to incriminate him is false, he then renders himself liable to a prosecution for perjury. If counsel are unable to agree as to form, the orders will be settled on notice.

Ordered accordingly.